## FORDYCE *v.* EDWARDS.

## Opinion delivered April 20, 1895.

1. *Master's liability to servant—Defective machinery.*

Where an experienced locomotive engineer sues a railroad company for injuries received in a collision of his engine with a horse, occasioned by the negligence of the company in furnishing him with a pilot raised so high above the track that the locomotive was dangerous to operate, a defect which he did not discover until he had started on his trip, an instruction that "the plaintiff had the right to presume that the engine furnished him by the defendant was in good condition, and he was not required to inspect the same for defects," is erroneous, as it should have been left to the jury to determine whether plaintiff used ordinary care to discover the defective condition of the engine.

2. *When knowledge of defect does not estop servant.*

If the engineer, without fault on his part, first discovered the condition of the pilot after he had commenced his trip, and the defect was not such as to render the engine immediately dangerous, he would not be required to abandon his engine, nor lose his right to recover by continuing on his journey until he reached a station where the defect could be cured, or a new engine obtained, provided the defect was such that it was reasonable to believe that the engine might still be safely operated by the exercise of great care, and the risk was not greater than a person of ordinary prudence would have taken under the same circumstances.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

### STATEMENT BY THE COURT.

The appellee, C. H. Edwards, was a locomotive engineer in the employ of appellants. The engine which he operated was derailed and thrown from the track by striking a horse. The appellee was injured, and he brought suit, alleging, in addition to other matters, that the injury was occasioned by the negligence of appellants in furnishing him with a locomotive with a pilot

raised so high above the track that the locomotive was dangerous to operate. The appellee testified that the pilot was raised about seven inches above the track, when it should have been only about four inches above it; that if the pilot had been only about four inches above the track, it would have lifted the horse, and thrown him from the track, but that, instead of throwing the horse from the track, the engine ran over him, thus causing the derailment of the engine, and the injury to appellee. He further testified that, at the time he took charge of the locomotive for the trip on which the injury occurred, it was standing in a depression of the track, and for that reason he failed to discover the condition of the pilot before commencing the trip; that he first discovered its condition after he had started on his journey, and that, as the engine was drawing a passenger train, and carrying the mail, he concluded to proceed, believing that he could do so safely by the use of great care; that he continued to exercise the utmost care, but, a horse coming suddenly upon the track, he could not avoid striking him, and the injury resulted.

Among other instructions, the court, at request of appellee, gave the jury the one following, numbered two: "(2) The plaintiff had the right to presume that the engine furnished him by the defendant was in good condition, and he was not required to inspect the same for defects, and if the jury find from the evidence that, during the course of the trip, he discovered that, owing to the use of an improper spring under the locomotive, the same had become more dangerous, then, by remaining in the performance of his duties, he did not assume the increased risk occasioned by such defect; unless the jury believe from the evidence that the increased risk was so hazardous that a reasonably prudent man, situated as the plaintiff was, would not have continued in the

performance of his duties." To the giving of this instruction the appellant duly objected, and excepted at the time.

*Sam. H. West* and *J. M. & J. G. Taylor* for appellants.

1. Whether defendant exercised ordinary care was a question of fact, solely for the determination of the jury. The court should have defined ordinary and reasonable care, and then it was for the jury alone to find whether it was exercised. Wood, Master & Serv. sec. 345 p. 706; 98 Pa. St. 495.

2. Plaintiff knew the condition of the pilot. Its defects, if any, were obvious and well known to him. He fully understood the probable consequences of its use. He therefore assumed the risk. 57 Ark. 164; 18 S. W. 933; Bailey, Mast. Liability to Servant, pp. 157, 184; 54 N. J. L. 411; 31 Mo. 66; 76 Pa. St. 394; 2 Rorer on Railroads, p. 1216; Beach, Cont. Neg. (2 ed.) secs. 369, 370; Whart. Law of Neg. (2 ed.) sec. 214; 77 Mo. 508; 2 Thomp. on Neg. 1008; 1 Sh. & R. Neg. (4 ed.) sec. 185.

3. The instructions ignore the question of risk assumed by the plaintiff. 44 Ark. 529; Bailey, Mast. L. to Serv. p. 142 and cases *supra*; Wood, Mast. & Serv. sec. 384.

4. A servant cannot recover for injuries received by reason of obvious defects in appliances and machinery, or from defects which he knew, or could have known by the exercise of ordinary care. The legal presumption is that defendant performed its duty. 21 Pac. 660; 8 S. E. 370; 38 A. & E. Ry. Cas. note on pp. 31–35; Wood, Mast. & S. sec. 382; Whart. Neg. sec. 206; 122 U. S. 189; Bailey, Mast. Liab. to Serv. pp. 170–175; 2 Rorer, Railroads, secs. 1212–1216.

*N. T. White, H. King White* and *W. T. Woolridge* for appellee.

1. None of the instructions asked for and given violate any rule of law laid down in 59 Ark. 98, or 59 *id.* 465. The true rule is laid down in 48 Ark 344; 59 *id.* 479; 51 *id.* 457; 46 *id.* 555; 56 *id.* 236. "It is the duty of the master to furnish safe tools for his employes, and a safe place to work, and the master will be responsible for negligence in failing to do so." This is the law as modified by 56 Ark. 236, and 59 *id.* 479, and has always been the law in this State. 59 Ark. 479.

2. The defect in the pilot was not a *patent* one. It only became patent when the locomotive reached a smooth or level track, but was *latent* while the engine was on the uneven "back shop track." 48 Ark. 374. The servant is not bound to search for latent defects. 33 Mich. 133; 23 Minn. 137; 11 Mo. App. 203; Wood, Mast. & Serv. 276; 54 Ark. 389; 56 *id.* 210.

3. Instructions six and seven, asked by defendant, are subject to the objection that if plaintiff operated the engine after discovering the defective condition of the pilot, then he cannot recover. But the trial court took a different view of the matter, and held that if the defective condition of the pilot was discovered by the plaintiff during the course of his journey, and the danger from its use was such that an ordinarily prudent person, situated as the plaintiff was, would not have refused to continue his journey with such defective pilot, then he was not guilty of contributory negligence, and might recover. This view of the case was exactly the one taken by this court in 57 Ark. 164. See, also, 18 S. W. (Mo.) 977; 67 Pa. St. 389; Shearman & Redfield on Neg. secs. 211–211.

RIDDICK, J. (after stating the facts.) We do not discover any material error in this case, except the rule announced by the court in the first portion of instruction

*1. Master's liability for defective machinery.*

No. 2. That instruction told the jury, without qualification, that the appellee "had the right to presume that the engine furnished him by the defendants was in good condition, and he was not required to inspect the same for defects." This is a correct statement of the law when speaking of latent defects. For such defects the servant is not required to look, but he must look for and take notice of defects that are obvious, and that can be discovered by ordinary observation. He cannot go blindly ahead regardless of consequences, but he must use his eyes, and make such inspection as ordinary care would require of one whose duty it is to take notice of obvious defects. *Little Rock etc. R. Co.* v. *Leverett*, 48 Ark. 347 ; *Wormell* v. *Railroad Co.* 79 Me. 405 ; *Way* v. *Railroad Co.* 40 Ia. 341 ; *Anderson* v. *Railway Co.* 39 Minn. 523, S. C. 41 N. W. 104 ; *Batterson* v. *Railway*, 53 Mich. 125, S. C. 18 N. W. 584 ; *Illick* v. *Railway Co.* 67 Mich. 632, S. C. 35 N. W. 708 ; *Morton* v. *Railroad Co.* 81 Mich. 435, S. C. 46 N. W. 111 ; Bailey's Master's Liability to Servant, 160 ; Wood's Master and Servant, sec. 376.

Now, in this case, the defect complained of was that the pilot of the engine was raised too high above the track. Instead of being about four inches above the track, according to testimony of appellee, it was seven or eight inches above it—nearly twice too high. This was an obvious defect. It was apparent to any one who looked at the pilot. The appellee was a trained and experienced engineer. He knew the danger in operating an engine with a pilot seven inches above the track. His testimony shows that he knew how the height of a pilot was regulated ; that it was done by the means of springs. Before taking charge of the engine, he saw the engine inspector take out the old spring and put in a new one, and he claims that this new spring raised the point of the pilot too high. Now, a material question in the case

is, why did appellee not notice this defect before starting on his trip? Did he use ordinary care in looking for obvious defects, and did he fail to discover it through no fault on his part? or was his failure to notice it due to want of ordinary care, and to his own inattention to his duties? Appellee stated that, at the time he took charge of the locomotive, it was standing in a depression in the track, but it was a question for the jury to say whether this would have prevented him from discovering the condition of the pilot had he used ordinary care. This question we think was not properly presented to the jury. On the contrary, as the only defect complained of was, under ordinary circumstances, an obvious defect, and as the instruction referred to told the jury that the plaintiff had the right to presume that the engine furnished him by defendant was in good condition, and that he was not required to inspect the same for defects, they would naturally conclude that the court referred to this defect, and that appellee was under no obligation to look for or see such defect, however obvious it might be.

It may be contended that this error was cured by some of the other instructions, but we think that, whether read alone or with the remainder of the charge, this instruction was prejudicial to the right of appellants.

It is contended that other instructions given by the court are erroneous, and it is true that, if read separately, the construction of one or two of them may be subject to slight criticism, but when the entire charge of the court is taken in connection with the facts of this case, we do not see that appellant was prejudiced, except as above stated.

If appellee, without fault on his part, first discovered the condition of the pilot after he had commenced his trip, and the defect was not such as to render the engine immediately dangerous, he would not be required

2. Servant's knowledge of defect not an estoppel, when.

to abandon his engine, or lose his right to recover by continuing on his journey until he reached a station where the defect could be cured, or a new engine obtained, if the defect was such that it was reasonable to believe that the engine might still be safely operated by the exercise of great care, and if the risk was not greater than a person of ordinary prudence would have taken under the same circumstances.

For these reasons we think that the court was justified in refusing to give instructions six and seven asked by appellant, which, in this regard at least, were calculated to mislead.

The judgment of the circuit court is reversed, and the cause is remanded for a new trial.