NEWARK GRAVEL COMPANY *v.* BARBER.

Opinion delivered June 17, 1929.

*Wynne & Miller,* for appellant.

*S. M. Casey* and *Shields M. Goodwin,* for appellee.

MEHAFFY, J.   The appellee, a citizen of Independence County, Arkansas, was, on the first day of July, 1927, working as a laborer for the appellant, Newark Gravel Company, near the town of Newark, Independence County.   The appellee and another employee of the company were carrying railroad ties, and the method of carrying them was for one laborer to take one end on his shoulder and the other laborer the other end, and, when they reached the place where they were to put the tie, it was thrown from the shoulder; the person behind would give the signal, and both parties would throw the tie at the same time.

The undisputed proof shows that it was customary for the man behind to give the signal before the tie was

thrown, and the undisputed proof also shows that the warning or signal was not given at the time of appellee's injury. It was alleged that the fellow-servant of Barber, whose duty it was at the time to give the warning or signal, failed to give any signal, and, without any notice to the appellee, threw his end of the tie, and it is also alleged that he threw it with more force than was necessary. One end of the tie rebounded and caught appellee's left foot and crushed it, breaking two bones. Appellee suffered great pain, was unable to do any work for more than two months, and prior to the injury he was a strong, able-bodied man, twenty-seven years of age, making $2 a day. He asked for damages in the sum of $5,000.

The defendant answered, denying each allegation of negligence, and alleged that the appellee voluntarily exposed himself to the danger, of which he had knowledge, and that it was in consequence of the dangers, which were open and obvious and to which appellee exposed himself, that the injury occurred. The answer also alleged that appellee was guilty of contributory negligence.

The case was tried, and a verdict returned by the jury for the sum of $2,000. Motion for new trial was filed, which the court overruled, exceptions were saved, and this appeal is prosecuted to reverse said judgment.

The appellee testified that he and Bob Austin were carrying railroad ties together, about 30 or 40 yards, over to the railroad; they were carrying them from where they were piled to the track. Appellee was in front, and Austin was in the rear. They walked up, and Austin threw his end before they got ready. Appellee had the tie on his left shoulder; Austin was looking right at him; it was customary to say "Go," and get ready. It was always his custom to give this signal. The man in the rear is supposed to give it. Austin threw his end too far and with too much force; threw it on top of the left-hand rail. The outside corner of the tie struck the top of the rail and caused it to roll back on appellee's foot. Austin did this without notice, and contrary

to custom. It caught appellee's foot between the rail and the tie, and mashed it; broke the bone, and caused him to suffer great pain. Appellee did not see the tie when it fell; it was behind him. He felt the tie fall, and tried to get out of the way, but failed.

Appellee testified about his injuries, and about treatment by the physicians, and about his suffering. The physicians also testified about the injury to his foot, and it was still giving him pain at the time of the trial. The injury is permanent.

Austin testified, in substance, that he was employed by the Newark Gravel Company at the time Cecil Barber got hurt; remembered the accident, and that they had been working as partners, carrying cross-ties some 25 or 30 yards. When they picked up the ties they carried them about 25 or 30 yards to the place to put them down, and stopped, and then unloaded the tie; that he was in the rear, following Barber; that at the time of the accident both of them were straddle of the rail, with the crosstie on their shoulders. They unloaded it, threw it against the other rail, and his end of the tie hit first, and rebounded and caught Barber's foot. They had reached the point where they wanted to throw the tie, and had stopped to unload it. Witness did not know whether any word was given to unload or not. They were both supposed to throw it. Witness' end hit about twelve inches before Barber's. He also testified about the injury. He said he was behind Barber, and Barber could not see him. He did not say whether he gave the word to unload or not. Does not remember, but he said they generally gave a signal, but sometimes did not. The man behind would give the signal, and witness was the man behind in this case. He also testified that the fact that they had both stopped did not necessarily imply that it was time to throw the tie. They generally gave a signal, but this time he did not remember. It was the custom to give it. He also said that he had never thrown his end of the tie too far before. That they failed to

throw it at the right place, and this was the only time witness had ever failed. Witness is not positive that he gave the signal, and, if he did not give notice, there was no other way that Barber would know when to throw. He further said: "If Cecil Barber is positive that the notice was not given, I would not attempt to deny that."

It would serve no useful purpose to set out all the testimony; the appellee and Austin are the only persons who know how the accident occurred, and there is no conflict in their testimony, except that Austin says he does not remember whether he gave the signal. Barber says Austin threw the tie with too much force, threw it too far, and Austin says that this is the first time that he had thrown the tie too far.

The appellant urges a reversal of the case, first, on the ground that the injury was due to inevitable accident, and calls attention to authorities holding that no recovery can be had for a mere accident. It is useless to call attention to or review authorities on this question, because this court has repeatedly held that no one is liable for a mere accident. Moreover, the jury were instructed fully on the question of negligence, and were told that appellee could not recover unless the injury was caused by the negligence of Austin, and that this negligence must be the proximate cause of the injury.

Appellant is correct in its contention that inevitable accident does not mean absolutely inevitable, but it means not avoidable by any such precaution as a reasonable man doing such an act then and there could be expected to take. In other words, if Austin was guilty of no negligence, and the thing happened, it would be an accident and be inevitable, although, looking at it after it happened, it might be easy to see how it could have been avoided. If Austin was guilty of negligence that caused the injury, it was not an accident, and appellant is liable. If Austin had been guilty of no negligence, then it would have been an inevitable accident, and there could have been no recovery. These questions, however, were sub-

mitted to the jury under proper instructions, and the jury's verdict is against appellant on this issue. Moreover, there is no evidence in the record tending to show an unavoidable accident. The undisputed proof shows that it was customary for the rear man to give a signal before he threw the tie, and in this instance, at the time Barber was injured, the signal was not given. Barber testifies that it was not, and Austin says he does not know. Both of them, however, testify that it was customary to give the signal.

It is next contended by the appellant that the court erred in refusing to direct a verdict for the defendant, and attention is called to a number of authorities, but we do not think the facts in this case bring it within the rule announced by any of the authorities referred to. If it were the custom to give a signal before throwing the tie, and this signal was not given, and Austin threw his end of the tie, and the injury resulted because of the failure to give the warning, the defendant would be liable. These questions were properly submitted to the jury by the court.

In speaking of an instruction given in a case, this court said recently:

"If appellant regarded the instruction as so indefinite as not to furnish a guide to the jury as to what would be negligence on account of it not stating that the failure of plaintiff's helpers to wait for the signal to move the tie, and moving it without the giving of said signal, it should have pointed this out with a specific objection." *St. L. S. F. R. Co.* v. *Miller,* 173 Ark. 597, 292 S. W. 986.

The instruction complained of by appellant in that case told the jury that it was the duty of other employees to wait until plaintiff had put his pick into the tie that was to be put under the rails of said track and prepared himself to pull said tie; that plaintiff's said helpers failed to wait until plaintiff had prepared himself for pulling said tie, but immediately pulled said tie after the plaintiff had stuck his pick into it, and thereby caused plaintiff's

foot to be injured; that plaintiff's said helpers thereby failed to exercise ordinary care for plaintiff's safety, and that plaintiff had not assumed the risk.

In the instant case the fellow-servant threw his end of the tie without giving any warning, and, when the appellee felt the tie moving, then he pushed it from his shoulder. It was the duty of Austin to give the signal, and he should not have thrown his end of the tie without giving the customary signal, and, if he did this, threw his end of the tie without giving any signal, he was guilty of negligence, and if this negligence was the proximate cause of the injury, appellee was entitled to recover.

The court in the above case held that the facts were sufficient to take the case to the jury; that if plaintiff's helpers failed to wait until plaintiff had prepared himself for pulling the tie, but pulled without giving any warning, negligence in this respect was a question for the jury, just as it is in the instant case if Austin threw the tie without giving the customary warning.

This court also said in a recent case:

"It was said that Smith was justified in acting upon the belief that his fellow-servant would do his part of the work in the ordinary way and would walk down to the end of the timber nearer the ground before stepping off. * * * So in the case at bar the jury was warranted in finding that, in the exercise of due care, Narramore should have warned Johnson before he let go of his end of the carrying iron. The five men were working under a foreman, and were directed by him to carry an iron pipe about the same depth. The pipe, weighing between four and five hundred pounds, was lying diagonally across a small ditch two and a half or three feet wide and of about the same depth. The method of work was for two men to carry the front end by placing a carrying iron under it, and two others were to carry the rear end in a similar way. * * * The men were working together, and each had a right to expect that his fellow-workmen would exercise due care in the premises for the safety of the others." *Texas Pipe Line Co.* v. *John-*

*son,* 169 Ark. 235, 275 S. W. 329; *St. L. S. W. Ry. Co.* v. *Smith,* 102 Ark. 565, 145 S. W. 218.

It is next contended that the court erred in giving in charge to the jury plaintiff's requested instructions. We do not deem it necessary to set out the instructions. We have reached the conclusion that the court fully instructed the jury, and that the instructions, taken together, constituted a correct guide to the jury.

There is substantial evidence to support the verdict, and the judgment is therefore affirmed.