TEXAS PIPE LINE COMPANY *v.* JOHNSON.

Opinion delivered June 29, 1925.

1.  MASTER AND SERVANT—ASSUMED RISK.—When a servant knows the method adopted for his work, the place which is furnished, and the appliances with which the work is done, he assumes the ordinary risk of injury which may result from such known methods and appliances.

2.  MASTER AND SERVANT—ASSUMED RISK.—A servant does not assume the risk of any injury which results from the master's negligence; and when the master is a corporation, he does not assume the risk of danger arising from the negligence of a fellow servant.

3.  MASTER AND SERVANT—QUESTIONS FOR JURY.—Where plaintiff and three other employees of a corporation were engaged in transporting an iron pipe weighing over four hundred pounds, and one of them let go of his end without warning, and plaintiff was injured thereby, the court properly submitted to the jury the questions of defendant's negligence and whether plaintiff assumed the risk or was guilty of contributory negligence.

4.  APPEAL AND ERROR—HARMLESS ERROR.—The Supreme Court will not reverse a judgment for the admission of testimony which had no bearing on the issues in the case and which could have resulted in no prejudice to the appellant.

5.  APPEAL AND ERROR—HARMLESS ERROR.—Error in admission of parol evidence of the contents of a writing was harmless where

there was no dispute between the parties as to the contents of the writing.

6. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT—INSTRUCTION.—An instruction, in an action against an employer corporation, that the master is not liable in damage from the mere fact that the servant has been injured by the act of a fellow servant was properly modified by adding, "unless such fellow servant was negligent, and such negligence was the proximate cause of the injury."

7. TRIAL—ABSTRACT INSTRUCTIONS.—It is not error to refuse to give instructions predicated upon alleged facts which are not in the record.

8. DAMAGES—PERSONAL INJURIES—AMOUNT.—A verdict for plaintiff in a personal injury action in the sum of $20,000 was not excessive where he was a stout able-bodied laborer 25 years old and earning $4.50 per day, and by reason of his injuries his heart was affected to the extent that he must always suffer pain and he can never again perform manual labor.

Appeal from Prairie Circuit Court, Southern District; *George W. Clark,* Judge; affirmed.

### STATEMENT OF FACTS.

S. S. Johnson sued the Texas Pipe Line Company to recover damages for personal injuries sustained by him while in the employment of said company.

It appears from the record that the Texas Pipe Line Company is a corporation, and was engaged in the construction and operation of pipe lines for the transmission of oil in the states of Texas, Arkansas, and elsewhere. In July, 1923, S. S. Johnson was employed by the Texas Pipe Line Company as a day laborer in Union County, Ark. He was twenty-five years of age and was a stout able-bodied young man.

According to the evidence of the plaintiff, he and four other men were working together at the time he was injured. They were working under a foreman and were engaged in laying a six-inch pipe line to be used for running oil into the main line. This was the method used in conveying oil from the well to its destination. The workmen had laid the six-inch line something like two and one-half miles and were sent back to connect its

pipe with the pipe on the main line. There was a pipe about twenty feet long and six inches in diameter lying diagonally over a ditch, which was something like two and a half or three feet wide and of the same depth. The pipe extended something like three or four feet across the ditch. The gang foreman ordered five laborers, including the plaintiff, to pick up the pipe and carry it across the ditch for the purpose of having it cut the right length to make the connection between the branch line and the main line. The pipe was made of iron and weighed four or five hundred pounds. Carrying irons were placed under the front and rear ends of the pipe and a man took hold of each end of the carrying irons. The two rear men placed their carrying iron under the pipe about four or five feet from its end. The plaintiff took the end of the pipe in his arms. When the two rear men came to the edge of the ditch, the one on the right-hand side of the carrying iron turned his end loose without any notice or warning to the plaintiff or to the man working at the other end of the carrying iron. This threw the other man loose from his end of the carrying iron and all the weight of the pipe was thrown upon the plaintiff. The weight of the pipe caused him to fall down with the pipe across his chest and side. The plaintiff was severely and permanently injured as the result thereof.

The testimony of the plaintiff was corroborated by that of Otho Harrison, who was working on the left-hand side of the carrying iron which had been placed at the rear end of the pipe. According to his testimony, Henry Narramore, who had hold of the carrying iron on the right-hand side of the pipe, dropped his end without giving any notice or warning to the witness or to the plaintiff. This caused the pipe to fall upon the plaintiff and severely injure him. When Narramore turned his end of the carrying iron loose, this threw the iron on Harrison, and he turned it loose. Narramore jumped to one side, when he turned the carrying iron loose. This caused the whole weight of the pipe to fall

upon the plaintiff, and it happened so quickly that the plaintiff was hurt before he realized his danger.

The evidence for the defendant tends to show that the injury was not caused by the negligence of a fellow servant of the plaintiff, but that it was due solely to the negligence of the plaintiff himself.

Other facts as to the character and extent of the plaintiff's injuries will be stated under an appropriate heading in the opinion.

From a verdict and judgment against it in favor of the plaintiff, the defendant has duly prosecuted an appeal to this court.

*Cooper Thweatt* and *Bogle & Sharp,* for appellant.

*Pace & Davis,* for appellee.

HART, J., (after stating the facts). It is first earnestly contended by counsel for the defendant that the undisputed evidence shows that the plaintiff assumed the risk, and that the court erred in not instructing a verdict in favor of the defendant.

It is true, as contended by counsel, that it has been uniformly held by this court that when a servant knows the method adopted for his work, the place which is furnished and the appliances with which the work is done, he assumes the ordinary risk of injury which may result from such known methods and appliances. Our holdings are equally uniform to the effect that a servant does not assume the risk of any injury which results from the master's negligence; and, when such master is a corporation, the servant does not assume the risk of danger arising from the negligence of a fellow servant.

The facts in the case at bar bring it within the ruling of the court in *St. Louis Southwestern Ry. Co.* v. *Smith,* 102 Ark. 562. The facts in the two cases are strikingly similar in all essential respects. In that case six workmen were carrying a large timber twenty-five or thirty feet long, weighing about 425 to 450 pounds. The workmen were divided into pairs, and each pair had a lug hook which caught beneath the timber and supported it while the workmen held the ends of the bars or han-

dles.  Thus three men were on each side of the timber
they were carrying.  Smith and a fellow servant named
Meadow occupied the center position.  In taking a piece
of timber from the pile it was necessary for Meadow to
get upon the pile, and he would walk along the timber on
the pile to the end where it sloped near the ground before
stepping off.  On the occasion in question, instead of
walking down to the end of the timber upon which he was
standing, Meadow suddenly, and without notice or warn-
ing to Smith, stepped off of the timber from an elevation
of eighteen or twenty inches to the ground.  This caused
the handle of the lug hook in Smith's hands to go up,
and when Meadow reached the ground he gave the hook
a hard pull which jerked the handle in Smith's hands
downward.  This made a greater strain upon Smith
resulting in a permanent injury known as inguinal
hernia.

The court held that these facts were sufficient to
carry the question of negligence to the jury.  It was said
that Smith was justified in acting upon the belief that his
fellow servant would do his part of the work in the
ordinary way and would walk down to the end of the
timber nearer the ground before stepping off.  The
court said that the jury was warranted in finding that, in
the exercise of due care, he should have done so or that
he should have warned Smith before stepping off of the
timber.

So in the case at bar the jury was warranted in
finding that in the exercise of due care Narramore should
have warned Johnson before he let go of his end of the
carrying iron.  The five men were working under a
foreman and were directed by him to carry an iron pipe
about the same depth.  The pipe, weighing between four
and five hundred pounds, was lying diagonally across a
small ditch two and a half or three feet wide and of about
the same depth.  The method of work was for two men
to carry the front end by placing a carrying iron under
it and two others were to carry the rear end in a similar
way.  The plaintiff had the rear end in his arms.  He

had a right to expect that none of his fellow workmen would drop his end of the carrying iron and thus let the weight of the pipe fall on him without notice to him. The men were working together, and each had a right to expect that his fellow workmen would exercise due care in the premises for the safety of the others.

It is first argued by counsel for the defendant that Narramore might have let his end of the carrying iron loose because his hand became cramped; but there is no testimony upon which to base such a finding. The only legitimate inference to be drawn from the attending circumstances is that Narramore dropped his end of the carrying iron through carelessness or negligence. Therefore, the court properly submitted to the jury the question of the negligence of the defendant and the assumption of risk of the plaintiff. The court also submitted to the jury the question of the contributory negligence of the plaintiff. Other cases in point as sustaining the ruling of the court are *C. R. I. & P. Ry. Co.* v. *Grubbs,* 97 Ark. 486, and *Great Western Land Co.* v. *Barker,* 164 Ark. 587.

It is also insisted that the court erred in allowing the plaintiff to testify that the defendant sent him release papers to sign and thereby permitted him to testify as to offers of a compromise.

In the first place, the plaintiff had been permitted to testify without objection that he had been staying in the hospital of the defendant and had been treated by the company doctor. During all of this time he was receiving half time as wages which amounted to $2.25 a day. He was also permitted to state that the defendant was paying his doctor bill and hospital bill, and that they had become slow in these payments. Then comes the testimony objected to, which is as follows: "They sent me release papers to sign, and they said in their papers that Dr. Wharton had dismissed me from the hospital, and sent me their papers to sign, and they said they would send me my half time pay till the day I signed the papers

and sent them back, and also they would give me a dollar extra for signing."

Thus it will be seen that the plaintiff had already been permitted to testify as to all the matters embraced in the testimony objected to, except as to the payment of one dollar for signing the release. This additional testimony is of no consequence whatever as bearing on the issues in the case and could have resulted in no prejudice to the defendant.

It is well settled that this court will not reverse a judgment for error which is not prejudicial to the rights of the party appealing. *L. J. Smith Construction Co.* v. *Tate*, 151 Ark. 278.

Moreover the plaintiff made a specific objection to the admission of the evidence solely on the ground that the release itself was the best evidence of its contents. Now there was no dispute whatever between the parties as to the fact that the release had been submitted to the plaintiff and as to what its contents are. Hence no prejudice whatever could have resulted to the defendant from proving these facts by parol evidence, instead of the release itself. Therefore, we hold that this assignment of error is not well taken.

The next assignment of error is that the court erred in modifying the defendant's instruction No. 3, which reads as follows: "You are instructed that the master is not the insurer of the safety of the servant; neither is he liable in damage from the mere fact that the servant has been injured from the act of a fellow servant, [unless such fellow servant was negligent, and such negligence was the proximate cause of the injury]. Plaintiff must also show, by a fair preponderance of the evidence, that the injury to the plaintiff was caused by the negligent act of the fellow servant. If he fails to show this, your verdict must be for the defendant."

The modification consists in adding the words contained within the brackets. These words made plainer the meaning of the instruction, and there was no error in adding them. The added words made the liability

of the defendant depend upon the negligence of a fellow servant of the plaintiff and the further fact that such negligence was the proximate cause of the injury.

It is next insisted that the court erred in refusing to give instruction No. 5 at the request of the defendant. The instruction reads as follows:

"You are further instructed that if you find that the two employees of the defendant at the rear end of the pipe, while crossing or about to cross the ditch in question, intentionally dropped their end of the pipe, but that they did so because they were thrown in sudden danger and acted to save themselves from injury; and you further find that said employees did not appreciate their danger soon enough to warn the plaintiff in time for him to avoid injury to himself, then the resulting injury to plaintiff would be a mere accident, and plaintiff would not be entitled to recover."

The court did not err in refusing to give this instruction because there is no testimony in the record upon which to base it. It would be mere surmise or conjecture on the part of the jury to find that Narramore dropped his end of the carrying iron to save himself from injury. There is nothing whatever in the testimony upon which to base such a finding. It is well settled that it is not error for a trial court to refuse to give instructions predicated upon alleged facts which are not in the record.

Finally, it is insisted that the court erred in not setting aside the verdict on account of being excessive. The jury returned a verdict in favor of the plaintiff for $20,000. At the time he was injured the plaintiff was a stout, able-bodied man not yet twenty-five years old, and he was earning $4.50 a day. He was in perfect health and weighed between 165 and 170 pounds. He had a wife and baby. The plaintiff testified that he is not able to do any physical work, and that every time his heart beats there is a pain over it. Dr. J. L. Green was his principal witness on this phase of the case. After the plaintiff had detailed to him his injuries Dr. Green testi-

fied that his condition was the perfectly natural consequence of the injury which the plaintiff described that he had received, and said that the plaintiff is not in a position to perform any manual labor. The witness had never seen that type of injury get well. They are always subject to nervous breakdowns and do not possess normal physical strength. The witness considered the plaintiff to be suffering from a condition, which is described by those who write about hearts as *neuro circulatory asthenia.*

Three physicians for the defendant examined the plaintiff, and all of them testified that his injuries were not serious. The jury by its verdict believed the testimony of Dr. Green and that of the plaintiff himself as to the character and extent of his injuries. This court has repeatedly stated that it is the duty of the trial court to grant a motion for a new trial where it is of the opinion that the verdict of the jury is contrary to the weight of the evidence. This court however has no such power. It is our duty to uphold the verdict if there is any evidence of a substantial character to support it. The jury has said by its verdict that it believed the testimony of Dr. Green and of the plaintiff himself as to the severity and permanency of the plaintiff's injuries. Their testimony is of a substantial nature, and it is our duty to take their testimony as reflecting the truth on this phase of the case. When this is done, it can not be said that the verdict is excessive.

As we have already seen, the plaintiff was a stout, able-bodied young man twenty-five years of age, and he was earning $4.50 a day when he was injured. His heart is affected to the extent that he must always suffer pain about his heart and can never perform manual labor again. When the jury considered these facts and the life expectancy of the plaintiff, it cannot be said that the verdict is excessive. *Mo. Pac. Rd. Co.* v. *Cathey,* 160 Ark. 153.

There is nothing in the record to indicate that the amount of the verdict was the result of passion or prej-

udice. The case was submitted to the jury upon instructions which fully and fairly covered the respective theories of the parties to this lawsuit, and the judgment will therefore be affirmed.