MISSOURI PACIFIC RAILROAD Co. *v.* VINSON.

4-5144

Opinion delivered July 4, 1938.

*Thomas B. Pryor, H. L. Ponder* and *H. L. Ponder, Jr.,* for appellant.

*Richardson & Richardson,* for appellee.

GRIFFIN SMITH, C. J. The question is, Was appellant negligent?

Appellee was an employee of the Railroad Company and was helping a fellow-servant stack crossties in a box car. Appellee was an experienced man . . . "and knew all about that kind of work."

In his testimony appellee said: "It was well lighted in the car and we were stacking the ties lengthwise, with two stacks at each end of the car. When I was injured we had already built the first stack up and were working on the second. We were stacking the ties almost to the ceiling, which is eight or nine feet high. Two men would take a tie, one on each end, and one man would lift it and place it on top of the stack, and the other man would shove it back. The man standing next to the stack would be facing toward the stack and away from the man on the other end. The man on the other end would be facing the stack, too.

"George Sims, a colored man, was helping me, and was on the other end of the tie. . . . I was the man in front and lifted [the tie] up on the stack. I got almost to the top—and of course there was a strain on me trying to put it up there—and this colored boy gave it a shove. Of course, he thought I had it high enough, I guess, I don't know, and he gave a shove. This threw a strain on me and I lost balance and the tie came near falling on me. I had to stay with the tie to prevent this happening, and I felt a sharp pain in my side. I did not know beforehand just when he was going to shove. I supposed he would see whether the tie was high enough, or not. After I was hurt I went ahead and helped with another tie or two—I don't know just how many—but I had to quit, and I got on the opposite side of the car from where the two foremen were. I stayed there five or ten minutes and then went around and helped the boys who were loading the ties in the car to do this work. The man I helped to carry the ties on the outside was named

Joe Faust. I did not make any complaint to the foreman or anyone else about being injured. . . . I reported back for work the next day and worked there raising track and tamping it. This is hard work, but it did not bother me any. After I was injured I worked between nine and thirteen days, and then I reported to Dr. Merrell. . . . [Later] I went to Dr. Brown and he told me I was ruptured.''

On cross-examination the witness testified: ''When I first went to [Dr. Merrell] I only complained of a pain in my chest and between my shoulders. I did not tell him I had been feeling bad for a few days and wanted some medicine, and I did not tell him I had been injured in any way. . . . I had been working inside that car nearly a whole day when I got hurt. . . . I had the tie raised up into the air, but it was not yet resting on the stack. The tie did not fall, but would have had I not held on to it. . . . I don't remember whether it dropped, or fell, or not. . . . The tie was raised up on my hands, but I did not have it quite high enough to clear the edge of the stack. . . . We never did get this tie on the stack until another boy came and helped us. . . . I just turned my end of the tie loose and let it go. I helped put up several ties after this. They might have been heavier, or lighter—just the usual run of ties. . . . I have no knot or bulge on my left side, or anything that shows from observation. . . . When I was raising up the end of the tie and George Sims shoved it, I don't think he had it high enough that it would go over on top of the stack, and I think it butted the other end of the tie.''

The gravamen of appellee's charge is that ''Sims [shoved the tie] knowingly if he did see, and recklessly if he did not see, and not accidentally.''

Summation of appellee's testimony discloses apparent inconsistencies. He says: ''The tie did not fall, but would have had I not held on to it. I don't remember whether it dropped or fell, or not. . . . I just turned my end of the tie loose and let it go.''

These expressions are taken from appellant's brief. Appellee has not abstracted any of the testimony, thereby conceding correctness of appellant's presentation.

The situation is this: An experienced laborer assisted by a fellow-servant, was doing the kind of manual labor he was employed to perform. There were no concealed dangers. Appellant, as well as anyone else, knew the weight of crossties. He, perhaps better than others, knew the height of the stack upon which the tie in question was to be placed. He undertook to lift his end high enough to clear the stack, and "supposed" the fellow-servant, before pushing, would see that it was in position. "I got almost to the top, and of course there was a strain on me, trying to put it there, and this colored boy gave it a shove. . . . I felt a sharp pain in my side."

There is no evidence of a custom requiring the fellow-servant to wait (before pushing the tie) until appellee gave a signal. Appellee merely "supposed" that such fellow-servant would watch the process of elevation and would withhold the shoving operation until the tie had cleared the stack.

Employers are not required to have a foreman standing at the side of every person who works at a job alone or in conjunction with others. Industry is not charged with the duty of supplying every man who works with a blueprint or chart showing how every step shall be taken, nor must a crier be present at all times to look, listen and anticipate on behalf of those who have the ability and the experience to exercise their own normal faculties. Two men performing the simple task of carrying and stacking crossties will be charged with knowledge that such ties possess weight, and that the law of gravity has not been suspended. Every man will be presumed to know more about his own strength and to be better informed as to his ability to lift, than is a stranger; and every manual task, however menial, requires the exercise of some intelligence upon the part of those who undertake to perform it.

504

In the instant case it is not alleged that George Sims was known to be negligent or incompetent, or that appellant was negligent in employing him. At the time the claimed injury is alleged to have occurred Sims was discharging his duties in a manner common to his employment. Appellee, as an experienced man, knew, or should have known, that the ordinary dangers attending the work were ever present. It was appellee's duty to lift his end of the tie. If beyond his strength, he should have asked for help. It is highly speculative to say that the hernia or rupture was caused at the time and in the manner set out in the complaint. It is just as probable that the fact, or act, of lifting (which admittedly was a part of appellee's duty) caused the damage, as it is to theorize and find that added strain imposed by action of the fellow-servant produced the injury.

At the conclusion of all the testimony the defendant asked for an instructed verdict in its favor. This should have been given.

The judgment is reversed, and the cause dismissed.