St. Louis-San Francisco Railway Company *v.* Ward.

4-5335                                    124 S. W. 2d 975

Opinion delivered January 16, 1939.

J. W. *Jamison* and *Warner & Warner,* for appellant.
*George A. Hurst* and *Partain & Agee,* for appellee.

McHaney, J. This action was brought by appellee against J. M. Kurn and John G. Lonsdale, trustees in bankruptcy, for the St. Louis-San Francisco Railway Company, hereinafter called appellants, and one Hollowell, to recover damages in a large sum alleged to have been sustained by reason of personal injuries on October 14, 1937, while in the employ of appellants, occasioned by the alleged negligence of said Hollowell, a fellow-servant. Trial resulted in a verdict and judgment for $5,000, for a reversal of which this appeal is prosecuted.

Appellee, Hollowell and a number of other employees were engaged as laborers in the dismantling and removing of the railway tracks, including rails, ties, etc., of the St. Paul branch of appellant railway company and in loading the rails and ties on cars. At the time of the alleged accident to appellee, he and Hollowell were carrying a heavy crosstie, weighing from 350 to 400 pounds, on their right shoulders to a box car some 300 feet away, appellee being in front, into which it was to be loaded.

The complaint alleged that, "as was the custom and practice, when they got to the car they both stopped for the purpose of permitting two other employees inside the car to lift same off of plaintiff's shoulder, so that same could be loaded into the car; that when plaintiff and said defendant so stopped the said defendant (meaning Hollowell) suddenly and without any signal or warning whatever to the plaintiff, carelessly and negligently stepped forward, thereby causing the plaintiff to be pushed against said railroad car and to stumble and his body to be twisted and wrenched by the heavy weight of said crosstie so that plaintiff was seriously and permanently injured," as later detailed. Appellant's answer was a general denial of all the material allegations of the complaint, and a plea of contributory negligence and of assumed risk, in bar of the action. Hollowell filed no answer or other pleading in the case, and did not testify to any fact in connection with this action, his only testimony being directed to the fact that he worked for appellants on the St. Paul branch job, and that he has a claim against appellants for an injury he received, he being represented in said claim by one of counsel for appellee.

We think the court erred in refusing to direct a verdict for appellants at their request on the ground that no actionable negligence is shown, conceding that the complaint states a cause of action, a question not raised or presented.

In detailing how the accident occurred, appellee testified as follows: "Q. In this particular instance, when you said you were hurt, what was the weight of that tie? A. I judge somewhere between 350 and 400 pounds. Q. Was it helped up onto your shoulder where you took them up? A. Yes, sir. Q. How far did you carry it to the box car? A. Between 200 and 300 yards. Q. When you reached the box car, what did you do? A. Stopped there and waited there a minute; there were two men ahead of us and waited until they got out of the way. Q. Where was the end of the tie? A. Pretty close to the door. Q. Was it or not on your shoulder? A. It was. Q. Then what happened? A. This Hollo-

well stepped forward. Q. Did he let you know that he was stepping forward? A. No, sir. . . . Q. What happened to you then? A. It threw me in a twist and threw me up against the side and bottom of the door on the box car and hurt me along in here. Q. Where was the tie at this time? A. Still on my shoulder. Q. Then what happened? A. These fellows took it off of my shoulder as quick as they could. Q. What did you do? A. I walked off and sat down.'' On cross-examiantion he testified: ''Q. Now, Boyd, let's see; you and Hollowell walked up with this tie, you on the front end, and he on the back end? A. Yes, sir. Q. And you walked up to the door on the front end, close to the door where the tie was to be delivered? A. Yes, sir. Q. And you stopped? A. Yes, sir. Q. You waited for the men inside to come and take it off your shoulder? A. Yes, sir. Q. And Hollowell came forward? A. Yes, sir; stepped forward. Q. And that threw you against the box car? A. Yes, sir; and in a strain. Q. You don't know what made Hollowell do that? A. No, sir. Q. You were not looking at him. A. No, sir. Q. Your back was to him? A. Yes, sir. . . . Q. He didn't explain why he stepped forward? A. No, sir. Q. And you don't know now why he did? A. No, sir. Q. The ground was dry where you were standing? A. Yes, sir. Q. And where he was standing? A. Yes, sir. . . . Q. Did the tie go against the sidewall of the box car or did your body? A. My body. . . . Q. The door of the car was open and that made the floor about level with your shoulder or something like that? A. The bottom of the door was right about along there (indicating). Q. Below the level of your shoulder? A. Yes, sir. Q. The man in the car would reach down and get the tie in his hands? A. Yes, sir.''

Two other witnesses testified they saw Hollowell take a step forward and shove appellee into the car. The two men working inside the car said they knew nothing about his getting hurt at the time, and only learned about it afterwards.

For the purpose of this decision we accept appellee's testimony and that of his witnesses as true. The

mere. fact that Hollowell took a step forward without notice to appellee that he would do so cannot be said to be negligence. Negligence is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the same or similar circumstances, and to be actionable there must be a violation of duty resulting in injury to another. *Armour & Co.* v. *Rose,* 183 Ark. 413, 36 S. W. 2d 70. Negligence is never presumed, but the burden is on the party asserting it to establish the fact by a preponderance of the evidence. Nor is it to be presumed from the fact of injury, and no one is liable in damages for a purely accidental injury. In this case, we think the evidence discloses a pure accident, for which appellants are not liable. Appellee and Hollowell were performing a very simple operation—the carrying of crossties to a box car to be loaded therein. They were given and needed no instructions as to how the work should be done. The fact that Hollowell took a step forward may have been intentional on his part for some particular good purpose or reason, such as shifting his position on account of the heavy burden, or it may have been inadvertent, unintentional and involuntary. They were carrying a heavy tie, weighing possibly 400 pounds. Hollowell was on the stand, but neither party questioned him as to whether he did take the step, or the occasion for doing so.

In *St. L. S. F. Ry. Co.* v. *Burns,* 186 Ark. 921, 56 S. W. 2d 1027, the late Justice BUTLER, speaking for the court, said: "It is a matter of ordinary observation that frequently there is some danger attendant upon the most common and ordinary transactions, but the care required is only to provide against such dangers as ought to be foreseen in the light of the attendant circumstances, and the ideal 'prudent person' will therefore not neglect what he can foresee as probable nor divert his attention to the anticipation of events barely possible, but will order his conduct by the measure of what appears likely in the ordinary course of events (citing authorities)."

In *Mo. Pac. R. Co.* v. *Medlock,* 183 Ark. 955, 39 S. W. 2d 518, we said: "From aught that appears from this testimony the slipping or stumbling which caused Sleepy Reeves to release his hold on the car may have been due to an accidental misstep. Had the testimony tended to show even inferentially that the slipping or stumbling was due to a failure on the part of Sleepy Reeves to watch where he was walking, or to walk as slowly as he should or to inattention or disobedience or other misconduct in the performance of his duties, then such testimony would have created a question of fact upon the issue of negligence for determination by the jury; but, since the cause of the slipping was conjectural only it was improper to submit the issue of negligence to the jury. Upon the record as it stands the court should have instructed a verdict for appellant." See also *St. L. S. F. Ry. Co.* v. *Bryan,* 195 Ark. 350, 112 S. W. 2d 641.

We think this case is ruled in principle by the above cases, but if there is any lingering doubt, then the recent case of *Missouri Pac. R. Co.* v. *Vinson,* 196 Ark. 500, 118 S. W. 2d 672, should dispel it. There the plaintiff, an experienced employee, was engaged with a fellow-employee in lifting and stacking crossties in a box car. He was lifting in front, facing the stack, with his side or back to the fellow-servant at the other end who was also lifting and facing the stack. Plaintiff got his end almost to the top of the stack when the fellow-servant gave it a shove, which threw him in a strain, causing him to lose his balance, and he felt a sharp pain in his side. He did not know just when the fellow-servant was going to shove, but thought he would see whether the tie was high enough before doing so. Negligence was laid on this account. In reversing a judgment for plaintiff and dismissing the action, we said: "The situation is this: An experienced laborer, assisted by a fellow-servant, was doing the kind of manual labor he was employed to perform. There were no concealed dangers. Appellant, as well as anyone else, knew the weight of crossties. He, perhaps better than others, knew the height of the stack upon which the tie in question was to be placed. He undertook to lift his end high enough to clear the stack,

and 'supposed' the fellow-servant, before pushing, would see that it was in position. 'I got almost to the top, and, of course, there was a strain on me, trying to put it there, and this colored boy gave it a shove. . . . I felt a sharp pain in my side.'

"There is no evidence of a custom requiring the fellow-servant to wait (before pushing the tie) until appellee gave a signal. Appellee merely 'supposed' that such fellow-servant would watch the process of elevation and would withhold the shoving operation until the tie had cleared the stack.

"Employers are not required to have a foreman standing at the side of every person who works at a job alone or in conjunction with others. Industry is not charged with the duty of supplying every man who works with a blue print or chart showing how every step shall be taken, nor must a crier be present at all times to look, listen and anticipate on behalf of those who have the ability and the experience to exercise their own normal faculties. Two men performing the simple task of carrying and stacking crossties will be charged with knowledge that such ties possess weight, and that the law of gravity has not been suspended. Every man will be presumed to know more about his own strength and to be better informed as to his ability to lift than is a stranger, and every manual task, however, menial, requires the exercise of some intelligence upon the part of those who undertake to perform it."

Assuming, therefore, that Hollowell took the step as charged, and that appellee was injured, as he claims, it could not have reasonably been foreseen as a probable consequence that an injury would occur.

We think the case of *Consolidated Construction Co. of Okla.* v. *Hatchett,* 195 Ark. 556, 114 S. W. 2d 31, cited and relied on by appellee in his brief and in oral argument, is not in point here, as also the other cases mentioned.

Since no actionable negligence is shown, the judgment must be reversed, and as the cause has been fully developed, it will be dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.