C. W. LEWIS LUMBER COMPANY *v.* ROGERS.

4-5739

135 S. W. 2d 674

Opinion delivered January 15, 1940.

*Fred A. Isgrig* and *Ernest Briner,* for appellant.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellee.

GRIFFIN SMITH, C. J.   The appeal is from a judgment compensating appellee for personal injuries sustained while loading lumber.

Appellee, with others, undertook to place a pine timber on a truck.[1]   Three men were lifting opposite the

---

[1] The timber was pine cut 4 x 10 inches, 28 ft. in length.   Appellee testified it was wet and weighed "from 400 to 500 pounds."   [A cubic foot of slash pine weighs 56 pounds when green, or 48 pounds air dried.   There were 7.77 cubic feet in the cut appellee assisted in lifting, or 435 pounds.   See The World Almanac and Book of Facts for 1939, p. 715.]

end where appellee was working. Negligence alleged is that Hale, a fellow-servant, suddenly released his hold on the timber and walked to the opposite side; that Hale gave no warning of his purpose; that appellee could not abandon his task instantaneously because of the danger to others, and that the unexpected downward thrust of the disproportioned load produced a severe strain, resulting in a hernia.

.Appellant's abstract of appellee's testimony does not clearly show whether appellee was aided by one or two men.[2]  Hale, however, testified that six men were engaged in the loading process, and that three were at each end.  He gave the names of those so employed.

None of those working at the time in question observed Hale's alleged negligent act.

In spite of the absence of testimony corroborating appellee's explanation of how he was hurt, it seems conclusive that he was injured while the timber was being lifted.

A written statement dated July 7, 1938, signed by appellee, mentions Hopkins and Hale.  There is the further recitation that ''I quit work and went to Dr. Jones, and he advised me I had a hernia.  About a year ago I suffered the same injury and lost about a day and a half. This was the same side and Dr. Jones pushed it back and I returned to work.''

Appellee denied having made all of the statements attributed to him in the writing, but admitted having signed it.  He said:  ''Only the top part was correct.'' In the verified portion appears the statement that appellee was one of two men lifting one end of the timber when the injury occurred, although in the next sentence he said  .  .  .  ''Zell Hale [and] Lee Hopkins were on the end that I was working.''

In the repudiated portion appears appellee's reference to his visit to Dr. Jones, and there is mention of the

[2] In appellant's brief at page 7 it is said: "Zell Hale, Jesse and Albert Lovell were at one end and picked it up first.  Zell and I got our end up and he turned loose of it.  Zell and I were lifting at the same end and there were three other persons at the opposite end."

former injury. Appellee contended that appellant's foreman Finkbeiner and an insurance adjuster took the statement, and that ''Dr. Jones told [the insurance man that the hernia] was on the same side [that had been ruptured in 1937] and [the insurance man] just put it down the way Dr. Jones said.''

On cross-examination appellee further explained how the timber was being handled when his injury occurred.[3]

Dr. Jones testified that his last examination of appellee was August 5, 1938. Witness first saw the patient in February, 1937. At that time he seemed to be suffering from a pain in the lower left side of the scrotum. An examination disclosed hernia, with possible strangulation. Appellee also, at that time, had enlargement of veins leading to a testicle. History of the case was that appellee had been struck in the side while loading lumber.

June 20, 1938, appellee came to Dr. Jones (witness) and complained that he had hurt his back while lifting timber. An examination revealed the former hernia, ''. . . only it was an inguinal hernia that had worked its way into the scrotum.'' It was larger than in 1937.

Appellee says his 1937 injury was on the right side, and that Dr. Jones told him it was not serious.

Appellant insists the work was being done in the usual way; that in view of appellee's experience of more than three years he knew what was being done and how the timbers were handled; that the six workmen were in line along the timber and were not at each end, and that if any unusual shifting of the load occurred it was so slight as not to attract the attention of others.

A preponderance of the testimony in point of the number of witnesses sustains these contentions. In this state of the record the trial court would have been justi-

[3] At page 16 of appellant's brief appellee is quoted in substance as having said: "When loading these timbers they had three men at each end. Jesse and Albert and Zell were at the back end and I and (here reporter failed to get the name) were at the other end, and when I hurt myself I told Lee to get down off the truck and finish loading. All picked the timber up at the same time. That was the usual way of loading. . . . They were using the same number of men that day they always used. They had been loading that kind of timber with the same number of men for years."

fied in setting the verdict aside if, in the court's opinion, the evidence adduced from witnesses for the defendant was more convincing than the testimony of appellee.

It is not impossible for injury to have occurred in the manner claimed by appellee. Hence, as has been held in many decisions of this court, there is authority for holding in the instant case that the evidence was legally substantial.

Appellant thinks the case at bar is controlled by *St. Louis-San Francisco Railway Co.* v. *Ward,*[4] *Missouri Pacific Railroad Co.* v. *Vinson,*[5] *Missouri Pacific Railroad Co.* v. *Medlock,*[6] *St. Louis-San Francisco Railway Co.* v. *Childers,*[7] and others of similar import.

In the Ward Case, the holding was that ". . . the evidence discloses a pure accident for which appellant is not liable."

It is more tenuous to distinguish the case at bar from the Vinson Case; for, in point of liability or non-liability, they are similar. But there is this difference: In the Vinson Case the alleged act of negligence was an incident to the ordinary method of stacking crossties. Vinson and a colored man were carrying a tie, the former leading. In explaining the occurrence Vinson said: "The colored boy gave [the tie] a shove. Of course, he thought I had it high enough, I guess, I don't know, and he gave it a shove." It was said in the opinion: "There is no evidence of a custom requiring the fellow-servant to wait until appellee gave a signal. Appellee merely 'supposed' that such fellow-servant would watch the process of elevation, and would withhold the shoving operation until the tie had cleared the stack."

Effect of the decision was to say that Vinson assumed the risk.

In the Medlock Case it was stated: "From aught that appears from this testimony the slipping or stumbling which caused Sleepy Reeves to release his hold on

4 197 Ark. 520, 124 S. W. 975.
5 196 Ark. 500, 118 S. W. 2d 672.
6 183 Ark. 955, 39 S. W. 2d 518.
7 197 Ark. 527, 124 S. W. 2d 964.

the car may have been due to an accidental misstep. . . . Since the cause of the slipping was conjectural only, it was improper to submit the issue of negligence to the jury.''

To the same effect is the Childers Case.

In the case before us appellee testified: ''It was not customary when loading for one to turn loose his hold unless he said something about it.''

On the question of negligence we think *Great Western Land Co. v. Barker,* 164 Ark. 587, 262 S. W. 650, and cases listed in the margin,[8] are controlling.

Affirmance because negligence was established by legally sufficient evidence does not, however, satisfy the rule that the extent of appellee's injury and his physical condition prior to the incident complained of must be shown by substantial evidence. Both are clearly revealed, but instead of supporting the judgment they point with certainty to evidence the jury must have arbitrarily disregarded.

It is conceded appellee was injured in 1937. In June, 1938, he was physically impaired. It is unfortunate that circumstances made it necessary that he engage in labor requiring heavy lifting. It is highly probable that an able-bodied man in appellee's situation when Hale abandoned his hold on the timber would have experienced no ill effects; and yet, it is remotely possible that even a strong man placed momentarily in an awkward position might have been adversely affected. But even so, the jury could not have returned the verdict it did without assuming facts not substantially presented.

In this situation it is the better practice to reverse and remand for a new trial. However, we think that when the speculative elements are removed, no jury could return a verdict for more than $1,000. Therefore, if within 15 judicial days appellee shall have entered a remittitur for $4,000, the judgment will be affirmed. Otherwise, it will be reversed, and the cause remanded for a new trial.

---

[8] *St. Louis Southwestern Railway Co.* v. *Smith,* 102 Ark. 562, 145 S. W. 218; *Texas Pipe Line Co.* v. *Johnson,* 169 Ark. 235, 275 S. W. 329; *Newark Gravel Co.* v. *Barber,* 179 Ark. 799, 18 S. W. 2d 331; *Louisiana & Ark. Ry. Co.* v. *Muldrow,* 181 Ark. 674, 27 S. W. 2d 516.