STANDARD OIL COMPANY OF LOUISIANA *v.* CHANDLER.

4-6833                                    165 S. W. 2d 595

Opinion delivered November 2, 1942.

896

*Thos. M. Milling* and *Moore, Burrow & Chowning,* for appellant.

*G. W. Lookadoo* and *J. H. Lookadoo,* for appellee.

SMITH, J. This appeal is from a judgment for the sum of $2,000 to compensate a personal injury alleged to have been sustained by appellee in the pursuit of his employment by appellant. No complaint is made that the verdict is excessive. The reversal of the judgment is prayed upon two grounds, (1) that appellee was not appellant's servant at the time of his injury, and (2) no negligence was shown upon which liability could be predicated.

L. E. King was employed by appellant under the following contract:

"Hope, Arkansas.
"March 20, 1939.

"To Standard Oil Co. of La.
"Mr. J. T. Rhodes, Div. Mgr.
"Little Rock, Arkansas.

"Maintenance of Equipment

"Gentlemen:

"I hereby propose, and, if this proposition is accepted, agree to repair upon receiving specific request from you, your company-owned retail dispensing equipment wherever installed, under the following terms and conditions:

"A. Time actually spent repairing equipment will be charged at 70c per hour. Materials furnished by me will be charged at net cost less discount or allowance. Any materials furnished by you will be properly accounted for and material not accounted for will be paid for. Tools and equipment required for performing the work will be furnished by me.

"B. No charge will be made for time and cost of transportation within a distance of five miles of Hope, Ark. For jobs beyond that area time and cost of transportation will be charged at five (5) cents per mile for total mileage traveled outside such area.

"C. All work will be done in workmanlike manner so as to put the equipment in good operating condition. If, after inspection, I find that any authorized repair of hand operated gasoline equipment will cost over $5, or of kerosene or lubricating oil equipment will cost over $1, I will secure further authorization before performing the work.

"D. Bills for work performed shall be payable within fifteen days after they are rendered.

"E. I hereby agree to indemnify and hold you harmless from any and all loss and damage and from all claims for injury, death, loss and damage of any kind or character, to person or property, and by whomsoever suffered or asserted, occasioned by or in connection with any work performed by me, or any act or default on the part of myself or my agents or employees in connection therewith, either while the work is in progress or as a result of the work done.

"F. In performing work hereunder I will act solely as an independent contractor and not as your agent or employee. I will be solely responsible for any persons used or employed by me in connection with such work. I will be responsible for workmen's compensation and for contributions and taxes under state and federal unemployment compensation and social security laws arising in connection with the work and will hold you harmless from any such liability.

"G. Either party hereto may terminate this agreement upon ten days' written notice to the other party.

"(Signed) L. E. King.

"Accepted:
"(Signed) E. P. Lyons,
"Assistant Manager."

This contract was evidently prepared for the purpose of creating the relation of owner and independent

contractor between appellant and King, and, read by itself, without reference to the manner in which it was to be performed, did create that relationship; but the testimony as to the manner in which it was to be performed suffices to make a question for the jury whether that relationship did, in fact, exist.

Appellee was injured while assisting King in the installation of a gasoline pump, and this was the character of work which King was employed to perform. It will be observed that the contract is silent as to the employment and pay of laborers whose service would be required by King in the performance of his own labor, yet it is an undisputed fact that it was contemplated by the parties that King should have assistance in the installation of the pump in question, just as he had been furnished assistance in the installation of other pumps.

Appellee had rendered this assistance on other similar occasions. He was hired by King, that is, King had the right to choose his assistants. At stated intervals King made a report to appellant of the labor he had hired, showing the number of hours and the wage per hour. The laborers signed this report, and it became a voucher. King prepared one voucher showing the labor performed by himself, and another by his assistant, and upon the receipt of the vouchers by appellant a check would be mailed to King covering his own labor and that of his assistant, and with the proceeds of this check King paid himself and his assistant. So that the undisputed testimony is that, although King paid appellee his wages, the payment was made with money furnished by appellant for that purpose. This fact, together with certain others, including the fact that appellant paid King's social security tax, made a question for the jury whether appellee was appellant's servant at the time of his injury, or was the servant of King as an independent contractor. Among these other facts was the testimony of appellee to the effect that, while appellee was engaged in the installation of the pump in question and other pumps on other previous occasions, representatives of appellant, who were present while appellee was performing the duties of

his employment, made suggestions and gave directions to appellee in the performance of those duties. One of these circumstances was that during a similar installation appellee was directed by a representative of appellant to cease painting when rain began to fall. The painting was an under-cover job, and appellee was told to quit work until the following day.

King had been employed by appellant for 23 or 24 years, the first 18 of which was under a fixed salary. In 1939, King began working by the hour, but he performed the same labor under both contracts. Appellant had first call on King for his services, and it was only when appellant had no work to do that King worked for someone else. Appellee testified that while working on a similar job while King was away for several days, and during King's absence, representatives of appellant gave him his orders and supervised his work, and that on other occasions he took orders both from King and any representative of appellant who chanced to be present.

The law of this subject has been so frequently and recently stated that it would be a work of supererogation to discuss and restate it. The law of the subject as announced, after an extensive review of our own and cases from other jurisdictions, is summarized in the case of *Moore and Chicago Mill & Lumber Co.* v. *Phillips,* 197 Ark. 131, 120 S. W. 2d 722, as follows: ''The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. On the other hand, if control of the means be lacking, and the owner does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists. (Citing a number of Arkansas cases.)''

In passing upon the sufficiency of the testimony to present this issue to the jury, we cannot be unmindful of the fact that appellant paid appellee his wages.

At § 16 of the chapter on Independent Contractors, 27 Am. Jur., p. 497, it is said: ''In the determination of

whether the contractor is independent, it is of importance to consider by whom the wages of a contractor's servants are paid, since the circumstances that wages of workmen hired by a contractor are paid by the principal employer tends, in some degree, to show that the contractor is a mere servant. But such circumstance is not decisive of a master-servant relationship, since the *prima facie* significance it possesses is rebuttable by proof that the wages are paid by the principal employer merely because the contractor is without necessary funds, or because the principal employer desires to protect his property against liens. Payment by the principal employer becomes an entirely negligible factor where the evidence shows that payment is made with money furnished by the person employed. Analogously, although the fact that wages of workmen employed by a contractor are paid by him tends to prove that the contractor is independent, it does not possess a conclusive significance in this regard.''

There is an exhaustive annotation of this subject in the notes to the case of *Chicago, R. I. & P. Ry. Co.* v. *Bennett,* 36 Okla. 358, 128 Pac. 705, 20 A. L. R. 772.

In our own Moore case, *supra,* Moore, who was held to be an independent contractor, first paid his labor with his own funds. Later the wages were paid ''on payrolls made out by Moore and at his direction, and receipts taken from each employee were introduced in evidence showing performance of labor on 'Arthur Moore's job.' ''

Here, appellee's wages paid, as herein stated, by appellant, were not, at any time, charged to King, the alleged independent contractor, although wages were paid on vouchers prepared by King.

We conclude, therefore, that the issue whether King was an independent contractor was properly submitted to the jury; and this was done under instructions of which no complaint is made.

The remaining question is equally close and of equal difficulty; that is, whether appellant was guilty of any actionable negligence. The testimony upon this issue is to the following effect: The pump which appellee and King were engaged in installing, when appellee was in-

jured, weighed 526 pounds, and it was necessary for them to lift it over a nipple in order to install it. They lifted the pump over this nipple, and lacked about 6 inches of having it at the concrete block on which it was to be placed, when King, without warning or apparent cause, turned loose of the pump and let the weight of the pump fall down upon appellee while he was in a stooped position, thereby inflicting the injury which appellee sustained. Now, King denied this, but this conflict in the testimony was, of course, a question for the jury. Appellee did not know why King released his hold; he only knew that he had done so. King furnished no excuse for this action on his part; indeed, he denies that it happened.

Appellant cites a number of cases more or less similar, and, among others, the following: *Missouri Pacific Ry. Co.* v. *Medlock,* 183 Ark. 955, 39 S. W. 2d 518; *St. Louis-S. F. Ry. Co.* v. *Burns,* 186 Ark. 921, 56 S. W. 2d 1027; *St. Louis-S. F. Ry. Co.* v. *Bryan,* 195 Ark. 350, 112 S. W. 2d 641; *Missouri Pacific R. R. Co.* v. *Vinson,* 196 Ark. 500, 118 S. W. 2d 672; *St. Louis-S. F. Ry. Co.* v. *Ward,* 197 Ark. 520, 124 S. W. 2d 975; *St. Louis-S. F. Ry. Co.* v. *Childers,* 197 Ark. 527, 124 S. W. 2d 964.

Of these, the first and the last cases cited appear to be chiefly relied upon. In the first of these, it was held that evidence that a fellow-servant accidentally slipped, causing him to release his hold on the end of the handcar which he and the plaintiff were lifting, thereby causing injury, was held not to sustain a cause of action. That holding was quoted and affirmed in the last case, above cited, under similar facts, and it was said there could be no recovery unless it were shown that the servant who released his hold of the object being carried was guilty of some negligence in doing so.

Here, appellee testified as follows: ''Q. Tell the jury what the custom was before that. A. We always had to ease them down, because we set them with a union. There is half a union on the bottom and if you drop them, you would skin them up to where they would leak. Q. You mean before you eased them down? Mr. Chowning: Let

him tell about it. A. I said we eased them down. Q. But this time he turned loose before you got it down? A. He sure did.''

We think this testimony unexplained made a case for the jury upon the question whether King was negligent in prematurely releasing his hold upon the pump, and that the holding in the case of *Public Utilities Corporation* v. *Carden,* 182 Ark. 858, 32 S. W. 2d 1058, is applicable here. It was there held that a case had been made for the jury where it was shown, without explanation, that one of two servants engaged in lifting a heavy rock had released his hold without warning. See, also, *St. L. Sw. Ry. Co.* v. *Smith,* 102 Ark. 562, 145 S. W. 218; *Great Western Land Co.* v. *Baker,* 164 Ark. 587, 262 S. W. 650; *Texas Pipe Line Co.* v. *Johnson,* 169 Ark. 235, 275 S. W. 329; *Newark Gravel Co.* v. *Barber,* 179 Ark. 799, 18 S. W. 2d 331; *M. P. Rd. Co.* v. *Simmons,* 190 Ark. 876, 81 S. W. 2d 924; *C. W. Lewis Lbr. Co.* v. *Rogers,* 199 Ark. 678, 135 S. W. 2d 674.

We conclude, therefore, that the testimony is sufficient to support the verdict, and as no error appears in the trial the judgment must be affirmed, and it is so ordered.