MISSOURI PACIFIC RAILROAD COMPANY. THOMPSON, TRUSTEE, v. BRYANT.

4-8496                                    209 S. W. 2d 690

Opinion delivered March 22, 1948.

Rehearing denied April 19, 1948.

150

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Jabez M. Smith, Roy E. Danuser* and *Jim C. Cole,* for appellee.

MINOR W. MILLWEE, Justice. Appellee recovered judgment against appellant for personal injuries which he allegedly sustained while employed as a member of an extra section gang of the railway company on July 30, 1946.

According to the allegations of the complaint and the evidence on behalf of appellee, he and other members of the extra gang were engaged in carrying steel rails on the date of the alleged injury. The rails were being taken from stacks along the right-of-way of appellant's main line track to a spur track connecting with the main line at Donaldson, Arkansas. The men were working under a foreman and in the usual and customary manner of operation one of the crew, designated as a "caller," would direct every step of the work to keep the crew working in unison. The rails were 39 feet long and weighed 1,703 pounds each, and were being carried to, and distributed along, the spur track for the purpose of replacing older and lighter rails then in use.

Appellee testified that on the day of his injury 16 men were being used to carry the rails without a "caller." The rails were carried by the use of tongs, with two men to each pair of tongs, and eight men on each end of the rail. At the time of his injury the 16 men picked up a

rail from a shallow ditch, or drain, at the foot of the railway embankment. It was customary for all the men to come out of the ditch and up the embankment together with the rail level, but on the occasion in question the eight men on the opposite end of the rail from appellee walked up the embankment ahead of those on the "down-hill" end of the rail. While the rail was in this position, appellee and another employee were on the extreme end of the rail and started walking backward out of the ditch, when some of the workmen behind them suddenly and without warning "let down," throwing a disproportionate weight of the rail on appellee, causing a severe strain and resulting in a hernia.

Appellee made immediate complaint of the injury to fellow employees and showed them the knot in his left groin at camp that night. He reported the incident to the foreman next morning and was directed to appellant's physician at Malvern. Upon the advice of the physician, appellee entered the hospital maintained for employees of the company at Little Rock, on July 31, and remained there for observation and treatment until August 4th. On his return to Malvern he consulted Dr. Louis Woods.

He also testified that he was unable to do any kind of work for two weeks following the injury and then engaged in cutting pulpwood for about a week. He has been unable to do work requiring heavy lifting since his injury, but has been able to cut billets about half the time. In this work he is paid by the cord and can regulate the speed of the work so that he can rest when he gets tired or is in pain. He is 46 years of age and has worked for appellant since 1924. He had never before assisted in moving rails that heavy with only 16 men.

Dr. Louis Woods testified that he examined appellee on August 10, 1946, and found him suffering from an indirect inguinal hernia which would tend to disable appellee from work requiring heavy lifting. He also testified that appellee was permanently injured unless the hernia was repaired by major surgery. The operation would cause appellee to be out of work for a period of approximately eight weeks.

Three members of the crew who were assisting in carrying the rail testified on behalf of appellant. They stated that appellee complained of being hurt immediately after carrying the rail and told them that he made an awkward step. One of these witnesses said he was doing the "calling" at the time and that it was improper for the men on one end of the rail to come out of the ditch and up the embankment ahead of those on the opposite end. He and the other two witnesses did not see this happen at the time appellee claims to have been injured. They also testified that 24 men with 12 pairs of tongs were used in carrying the rail in question and denied there was a sudden letting down of the weight by other crew members.

The foreman of the extra gang testified that there were at least 30 men in the crew, but all of them were not carrying rails. They always carried 12 pairs of tongs and 24 men were used in carrying rails of this weight. He also stated that 16 men could not do the work with safety because the excessive weight of the rail would be likely to strain them. He did not recall whether he was present at the time appellee claims to have been injured and denied that appellee reported the injury to him.

A physician who examined appellee at the Missouri Pacific Hospital testified that appellee had "inflammation of the splematic cord in the inguinal region," but the witness found no evidence of a hernia. He dismissed appellee from the hospital on August 4th, and told him to resume work when he felt like it and to come back, if further trouble developed.

The first and principal contention of appellant for reversal of the judgment is that the evidence is insufficient to show any neglgience on the part of appellant or the employees working with appellee at the time of his alleged injury. Among the cases cited in support of this contention are the following: *Missouri Pacific R. R. Co.* v. *Medlock,* 183 Ark. 955, 37 S. W. 2d 518; *St. Louis-S. F. Ry. Co.* v. *Burns,* 186 Ark. 921, 56 S. W. 2d 1027; *St. Louis-S. F. Ry. Co.* v. *Byran,* 195 Ark. 350, 112 S. W. 2d 641; *Missouri Pacific R. R. Co.* v. *Vinson,* 196 Ark. 500, 118 S. W. 2d 672;

*Kansas City Southern Railway Co.* v. *Holder,* 198 Ark. 127, 127 S. W. 2d 807; *Missouri Pacific R. R. Co.* v. *Hudson,* 200 Ark. 404, 139 S. W. 2d 29.

In answer to this contention appellee relies on *C. W. Lewis Lbr. Co.* v. *Rogers,* 199 Ark. 678, 135 S. W. 2d 674, and earlier decisions cited in that case. The facts in that case are very similar to those in the case at bar. The evidence on the part of the plaintiff tended to show that he sustained a hernia when a fellow employee suddenly and without warning released his hold on a heavy timber that was being placed on a truck. The appellant in that case relied on cases cited by appellant in the instant case, but these decisions were distinguished and it was held that the following cases were controlling on the question of negligence: *St. Louis Southwestern Railway Co.* v. *Smith,* 102 Ark. 562, 145 S. W. 218; *Great Western Land Co.* v. *Barker,* 164 Ark. 587, 262 S. W. 650; *Texas Pipe Line Co.* v. *Johnson,* 169 Ark. 235, 275 S. W. 329; *Newark Gravel Co.* v. *Barber,* 179 Ark. 799, 18 S. W. 2d 331; *Louisiana & Ark. Ry. Co.* v. *Muldrow,* 181 Ark. 674, 27 S. W. 2d 516.

In the case of *Standard Oil Co. of Louisiana* v. *Chandler,* 204 Ark. 895, 165 S. W. 2d 595, the testimony of plaintiff showed that he and King, a fellow employee, were engaged in lifting a heavy pump into place when King suddenly released his hold without warning, permitting the pump to fall and injure the plaintiff. There was a positive denial by King of plaintiff's testimony. It was held that a case was made for the jury on the question of the negligence of the fellow employee and the cases relied on by appellant were again distinguished. It was said in that case: "We think this testimony unexplained made a case for the jury upon the question whether King was negligent in prematurely releasing his hold upon the pump, and that the holding in the case of *Public Utilities Corporation* v. *Carden,* 182 Ark. 858, 32 S. W. 2d 1058, is applicable here. It was there held that a case had been made for the jury where it was shown, without explanation, that one of two servants engaged in lifting a heavy rock had released his hold without warning." The case of *C. W. Lewis Lbr. Co.* v. *Rogers,*

*supra,* and similar cases were cited in support of the conclusion reached by the court.

It is observed that the question whether appellant was negligent in failing to furnish a "caller," and whether appellee's fellow servants were negligent in bringing one end of the rail up the embankment ahead of those on the other end of the rail, and whether other workmen suddenly released their part of the load, were all sharply in dispute.

The evidence is also in conflict as to whether 16 or 24 men were used to carry the rails at the time of appellee's injury, and appellant's foreman admitted that the rail was too heavy for 16 men to carry with safety. Under a similar state of facts in *Griffin* v. *St. Louis, I. M. & S. Ry. Co.*, 121 Ark. 433, 181 S. W. 278, this court held that the testimony was sufficient to warrant the submission to the jury of the question of negligence of the foreman in permitting an insufficient number of men to perform the work.

We are of the opinion that there was substantial evidence adduced at the trial from which the jury were warranted in finding that the injury received by appellee was caused by the negligence of appellant and the fellow servants of appellee. This evidence was sufficient to support the verdict and there was no error in the refusal of the trial court to direct a verdict for appellant.

It is next insisted that the court erred in permitting appellee to testify that appellant's physician at Malvern told him to go to the Missouri Pacific Hospital and that he (appellee) had a rupture. It appears that this physician died before the trial. When counsel for appellant objected to this testimony his objection was sustained and the court admonished the jury not to consider the statement of the doctor that appellee had a rupture. It is undisputed that appellee went to the hospital where he was treated and the fact that he was advised to go there by appellant's doctor was not, under the circumstances, prejudicial.

It is next contended that the court erred in giving four instructions requested by appellee. The instruc-

tions objected to have been approved by this court in many similar cases. Appellant cites no authority in support of his contention that the instructions are erroneous, and we find no error in any of them.

Error is also assigned in the refusal to give defendants' requested instruction No. 7A as follows: "You are instructed that before you can return a verdict herein against the defendants that the plaintiff must prove and you must find that the defendants or their servants, agents and employees were guilty of negligence and that this negligence produced the injuries complained of in the complaint and unless the plaintiff has so proven, then your verdict will be for the defendants *and in this connection, you are told that it is not sufficient merely because other employees let hold of said rail, which they and the plaintiff were carrying, but the burden is upon the plaintiff to show that said employees let down of said rail negligently and carelessly.*"

The court gave the above instruction as modified by omitting the language shown in italics. The modification of this instruction did not in our opinion result in error so prejudicial to appellant as to call for a reversal of the case. That part of the instruction which was omitted merely re-emphasized what the court had already told the jury in the part given, as well as in other instructions, i. e., that the fellow servants must have acted negligently before appellant could be held liable for the injury to appellee. The court defined "negligence" in other instructions given and the jury were bound to have understood that a finding of negligence was essential before a verdict could be returned on any of the charges alleged in the complaint.

At the conclusion of all the evidence appellant requested a directed verdict in its favor on the ground that the evidence showed that appellee was engaged in interstate commerce at the time of his injury and circuit court was, therefore, without jurisdiction. It is now argued that the action should have been brought under the Federal Employers' Liability Act (45 U. S. C. A., § 51 *et seq.*) since the proof clearly showed that appellee was engaged

in interstate commerce. We agree that the case should have been tried under the Federal Act and think the allegations of the complaint, as amended by the proof, were sufficient to authorize a recovery under that act. It is not essential that the federal statute be pleaded, or in any manner referred to, in a plaintiff's pleadings to authorize a recovery under the act. 35 Am. Jur., Master and Servant, § 482. Appellant did not demur to the complaint because a cause of action was not stated nor did he file a motion to require appellee to elect.

However, assuming that the motion for a directed verdict was timely made—was appellant in any manner prejudiced by trial of the issues under the common law doctrine of negligence? In the case of *Chicago & Northwestern Ry. Co.* v. *Gray,* 237 U. S. 399, 35 S. Ct. 620, 59 L. Ed. 1018, the U. S. Supreme Court held that it would not reverse a judgment of a state court in an action for damages for personal injuries, although the action was begun under a state statute when it should have been brought under the federal act, where the error was not prejudicial. See, also, *Duncan* v. *Thompson,* 146 S. W. 2d 112, 62 S. Ct. 58, 314 U. S. 589, 86 L. Ed. 475.

Appellant was favored rather than prejudiced by the failure to proceed under the Federal Employers' Liability Act in the instant case. The question of assumed risk was submitted to the jury. This defense has been completely abolished by the 1939 Amendment to the Federal Employers' Liability Act (45 U. S. C. A., § 54). *Tiller* v. *Atlantic Coast Line R. Co.,* 323 U. S. 574, 65 S. Ct. 421, 87 L Ed 446, 143 A. L. R. 967. It follows that no prejudice resulted to appellant by the failure to try the issues herein under the federal act, and it is in no position to claim error on that ground.

It is also contended that error was committed in refusal of the court to declare a mistrial because of prejudicial argument to the jury by counsel for appellee. We have carefully considered the several objections made to the argument and find that any error that may have arisen therefrom was cured by proper admonition of the trial court.

It is finally insisted that the verdict for $3,000 is grossly excessive. Appellee is 46 years old and the evidence discloses that his earning capacity of $155 per month has been reduced 50 per cent on account of his injury. The injury is permanent unless repaired by major surgery. It was held in *James B. Berry's Sons Co.* v. *Presnall*, 183 Ark. 125, 35 S. W. 2d 83, that an injured employee was not required to submit to an operation for hernia in order to minimize damages sustained through the employer's negligence. There was also evidence that appellee has suffered considerable pain on account of the injury. Under these circumstances we cannot say the verdict is excessive.

We find no prejudicial error, and the judgment is affirmed.