St. Louis-San Francisco Railway Co., J. M. Kurn,
Trustee, v. Childers.

4-5331                                    124 S. W. 2d 964

Opinion delivered January 16, 1939.

*J. W. Jamison, Warner & Warner* and *Paul E. Gutensohn,* for appellant.

*Partain & Agee* and *Ralph W. Robinson,* for appellee.

Smith, J. Appellee filed a complaint alleging two separate causes of action, under the Federal Employers' Liability Act, against the trustees in bankruptcy of the appellant railway company.

The first count in the complaint alleges an injury suffered in September, 1936. Appellee was then a section hand, with thirty years' experience in that service, and he testified that he was more familiar with that work than was Hess, his foreman. The section crew of which appellee was a member consisted of himself, his foreman, and two other section men—Bryan and Perryman.

This crew, while riding on a motor or hand-car, saw a train approaching, which was not an unusual event. The crew stopped the car and proceeded to remove it from the track. No attempt is made to predicate negligence upon the time or manner of removing the car, which was done by two of the men lifting each end thereof. Perryman and appellee were at the front end of the car, lowering it down the railway embankment or dump, which was about four feet high. Hess and Bryan were at the other end, near the railroad track. There was a space of about five feet between the rear end of the car and the railroad crossties. As the train approached, Hess and Bryan released their hold and testified that they did so to avoid being struck by the train. One of the controverted questions of fact in the case is whether it was necessary for Hess and Bryan to release their hold on the car to protect themselves. Appellee testified that they could have retained their hold on the car without endangering their safety, and that if they had done so the car would not have rolled down on him and Perryman, as it did do. No orders were given by the foreman, and none appear to have been necessary, except to remove the car from the track. All the men understood how the car should be removed.

Appellee testified: "Clyde Bryan and Jake Hess, the section foreman, turned loose of the car, and let it right on down on Perryman and me and that rod that comes from the sills on the car sticks out. We both turned sideways to check the car and that rod caught me right here." Appellee testified that as a result of being struck in this manner he sustained a hernia from which he has since suffered. A judgment was recovered by appellee on this count in the sum of $4,000.

The testimony is sharply conflicting as to whether appellee sustained a hernia or other serious injury; but we pretermit a discussion of the injury, as we dispose of the case upon a consideration of the question of liability for the injury, without regard to its extent.

Appellee knew that Hess and Bryan had released their hold on the car, but stated that "I thought they ought to have helped hold the car." He described the cause of the injury as follows: "I was just trying to

hold it, I was trying to hold it to keep it from going on down the dump, trying to keep it from going on down where it would be hard to get back up." Appellee and Perryman did hold the car and it did not run down the dump. This was an act of their own volition. Perryman does not claim to have been injured. There appears to have been no reason why appellee might not have stepped aside to a place of safety, as did the foreman and Bryan, except that appellee knew it would be difficult to roll the car up the dump, if it were allowed to roll down.

As has been said, the suit was brought under the provisions of the Federal Employers' Liability Act, and the sufficiency of the evidence to establish negligence is governed by the terms of that act and the applicable provisions of the common law. *Missouri Pacific R. R. Co.* v. *Montgomery,* 186 Ark. 537, 55 S. W. 2d 68. A headnote to the case of *Toledo, St. Louis & Western R. R. Co.* v. *Allen,* 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513, reads as follows: "3. Except as specified in § 4 of the Federal Employers' Liability Act, the employee assumes the ordinary risks of his employment, and, when obvious or fully known and appreciated, the extraordinary risks and those due to negligence of his employer and fellow employees."

Here, there was no superior knowledge on the part of the foreman, nor were any orders given by him to appellee as to the manner in which he should perform his duties. He knew Hess and Bryan had released their hold on the car, and there was no reason why he, too, should not have done so, except that he knew it would be difficult to roll the car up the dump, if it were allowed to roll down. He knew better than anyone else whether his strength would enable him to prevent the car rolling, and we, therefore, conclude that any injury which he may have sustained—whatever its extent may be—was the result of a risk which he had assumed as an incident to his employment.

Appellee's injury did not prevent him from remaining in the service of the railway company, and with the loss of only a few days' time he continued working as a section hand, under the same foreman, until August 10, 1937, at which time he sustained a second injury, to com-

pensate which he sued in the second count of his complaint, and upon this count a judgment was recovered in his favor for $6,000, making a total recovery of $10,000 on the two counts.

Appellee's second injury occurred in the following manner. The section crew remained unchanged except that Raymond Temple had replaced Bryan. The motor car had been taken off the track at the noon hour while the men ate their lunch. After eating, the car was placed back on the track or re-railed, as that action was called.

Appellee detailed the circumstances of his injury as follows. This was the same motor car that I was in the first time I was hurt, and the same foreman. We were putting the car on the track to go back to work. Me and Rufus Perryman picked up the front end and started west with it, and when we came around here the right hind wheel hit the rail; it didn't take it, and when Mr. Perryman dropped it, it would not have hurt me any worse if you had stabbed a knife into me. To put the motor car on the track you just pulled it over there and leave the rear wheels in the middle of the track, and the two head men will pick up the front end of the car and come around here with it, and then the two rear men pick up their end and come around here with it, and that is all that is done. I was standing astraddle of the east rail holding the motor car. We had our backs to it. Perryman was to my left on the same end. Hess and Temple were at the rear of the car. I couldn't see them, as I had my back to them. Perryman was at the left end, south of me, and we were headed north. I was working on the north side of the rail, on the right-hand corner. Perryman and I were lifting that end of the car, and we had it off the ground and the track, Mr. Rufus Perryman —when the weight of the car came down on me, I looked over my shoulder to see what was going on, and he was grabbing hold of the car. He had broken loose, and he grabbed for it and the weight of the motor car struck me and injured my back, and I haven't been clear of pain since.

In answer to the question, "It (the car) dropped suddenly?" appellee answered: "Yes, sir, it went down."

Upon his cross-examination appellee testified as follows: "Q. You were not looking at Perryman? A. Not until the weight of the car hit me. Q. You don't know what he did? A. I don't know what he did. All I know is that he dropped the car."

Perryman testified as follows: As we started to pick up the car, to re-rail it, Mr. Childers said: "The handle bar is too hot," and he reached back and got Mr. Hess' sack and put it on it, and we went ahead and balled the car. Witness did not drop his end of the car, but did let it down when appellee said the handle bar was too hot. When this was done appellee picked up the gunny sack and put it on the handle bar, and we went ahead and picked up and balled the car, and we both let the car down together. He did not at any time take his hands off the front end of the car and cause it to fall on appellee, and he knew nothing about appellee being injured until the following morning, when appellee stated that he had sprained his back.

Temple testified that he did not notice anything unusual in the way the car was let down, and he didn't hear appellee and Perryman say anything to each other. He saw appellee put the sack on the handle bar, and they went ahead and put the car on the track, and the first he heard of appellee being injured was when the car stopped and they were going to put it off, he said he had strained his back at the other place. Was lifting the back corner of the car, and it didn't seem to jar me any.

Hess, the foreman, testified that he and Temple were at the rear end of the car, and appellee and Perryman picked up the front end, and they walked on around until the car came against the east rail, and that is where the car was set up, and when the car hit the rail he jumped off to ball the left rear wheel. His shoulder was under the car and he couldn't see what happened. Appellee said nothing about being hurt at that time, but after we had put the car off at another stop about a half a mile away appellee said something about wrenching his back. The car was let down all at once, abruptly enough to cause him to look up, and he saw appellee and Perry-

man looking at each other, and then they reached down and picked the car up. He thought they let it down to get another hold on the car.

On his cross-examination Hess was asked: "Q. You knew that somebody had done something that they shouldn't have done in putting the car on the track?" and he answered, "No, sir." He was then examined as follows: "Q. Why did the hand car fall? A. I knew they let the car down. Q. You knew that one of them or both of them did something to cause it to come down, one or both? A. I figured both. Q. Did one of them or both of them? A. Both, I judge. Q. But did one or both of them? Mr. Warner: He answered that. Q. No, he didn't, he is judging, you didn't cause it to be dropped? A. No, sir. Q. The other man on the rear of the car by you didn't cause it? A. No, sir. Q. One or both of them in front? A. Yes, sir, one or both of them. Q. It dropped suddenly? A. Yes, sir, it went down."

On his redirect examination Hess testified as follows: "Q. Did the car go down in any different manner than it usually goes down? A. They just let it down when I noticed it. Q. Did you notice any jolt or jar or anything like that? A. No, sir."

On his further cross-examination Hess testified as follows: "Q. You stated they let the car down in the usual way that they set it down? A. We set it down all the time. Q. Yet you told this jury that it dropped abruptly and suddenly and you looked up and saw them facing each other? A It didn't go down no faster than ordinary. Q. They put it down like they always do? A. It just went down. Q. Was that the usual customary way of handling a car; tell the jury why you looked up? A. Because they didn't have it all the way around and set it down before they got to where they should have set it down."

The second count—like the first—was based upon the Federal Employers' Liability Act, and the Supreme Court of the United States, in the case of *Atchison, Topeka & Santa Fe Ry. Co.* v. *Saxon,* 284 U. S. 458, 52 S. Ct. 229, 76 L. Ed. 397, said: "As often pointed out, one who claims under the Federal Act must in some adequate way

establish negligence and causal connection between. this and the injury.'' In other words, before there can be a recovery, to compensate an injury to the employee, there must be negligence on the part of the employer with causal connection between that negligence and the employee's injury.

Upon this issue, we think the case of *Missouri Pacific R. R. Co.* v. *Medlock,* 183 Ark. 955, 39 S. W. 2d 518, under the facts therein stated, is controlling here. In that case the injured employee relied upon testimony to the following effect: '' 'We worked until about 2 o'clock, and we started to turn our car to come back to town; it was at the crossing, and we started to turn the car around, and it got hung and one of the boys went around to prize it loose, and that left two at my end of the car, and some way Sleepy Reeves stumbled and left the weight on me.' '' We there said that the fact that one section hand had let the weight of the car down upon his fellow servant was not, alone, sufficient to support a recovery, but it was essential to show that there had been inattention or disobedience of orders, or other misconduct in the performance of duty, on the part of the employee who had let the weight of the car fall on his fellow servant.

In the instant case the testimony is sharply conflicting as to whether Perryman let the car fall; but inasmuch as appellee testified that he did, we must assume that the jury found the fact so to be. But, even so, there is no testimony that Perryman was negligent in this respect. Appellee did not, at the time of his injury, reproach Perryman, nor did he then make complaint that Perryman had improperly performed his duty in assisting to re-rail the car. He admitted that he did not see what Perryman did, and he gave no testimony to support the finding that Perryman had negligently allowed the car to fall upon him. All the other witnesses testified that they saw nothing out of the ordinary to attract their attention.

The weight of the car was such that one might sprain his back by lifting it, and especially so if he performed that duty in an improper manner. This, we think, is one of the risks of the employment in which appellee was

engaged and which he must be held to have assumed. There can be no recovery here unless it be shown that Perryman was guilty of some act of negligence causing the car to fall which occasioned appellee's injury, and appellee offered no proof to show what that act was, except to say that Perryman let the weight of the car fall down upon him. That fact was shown in the Medlock Case, *supra,* but we there said that the proof of that fact alone did not establish liability—an affirmative showing of negligence being required.

Inasmuch as that showing was not made, the judgment must be reversed, and, as the causes appear to have been fully developed by the testimony of all the witnesses present, the case will be dismissed.

HUMPHREYS, MEHAFFY, JJ., dissent.