MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. KEETON, ADMINISTRATRIX.

4-7432                                    183 S. W. 2d 505

Opinion delivered October 23, 1944.

794

*Thos. B. Pryor, Thos. Harper* and *Harrell Harper,* for appellant.

*Partain, Agee & Partain,* for appellee.

McHANEY, J. Appellee, as administratrix of the estate of her deceased husband, W. S. Keeton, brought this action under the Federal Employers' Liability Act against appellant to recover damages for herself for loss of contributions and for said estate on account of alleged conscious pain and suffering, on account of the alleged negligent injury to and death of her said husband. The complaint alleged that said intestate was employed by appellant as a conductor on a train from Braggs, Oklahoma, to Camp Gruber, and that while so employed and in the discharge of his duties, he was, through the negligence of appellant and its engineer, knocked and caused to fall from said train and was thereby seriously and fatally injured; that intestate was riding upon one of the cars of said train while it was being moved which the

engineer knew or should have known; and that said engineer "carelessly and negligently and without signal or warning suddenly and violently stopped said engine and cars with a hard, sudden, violent and unusual jerk and jar, thereby throwing deceased with great force and violence from the said train," resulting in serious injury from which he died about 3 or 4 days later. The answer was a general denial and a plea that intestate's injury and death were occasioned by his own negligence.

Trial resulted in a verdict and judgment for appellee for $20,000 for loss of contributions and $10,000 for conscious pain and suffering, a total of $30,000, from which is this appeal.

The facts are that, on May 29-30, 1942, the train crew of which intestate was a conductor was engaged in switching cars from Braggs, Oklahoma, to Camp Gruber, a distance of about 1½ miles by rail; that Roy Brown was the engineer, Fry was fireman, and Vaughn and Plunkett were the brakemen; that they would take loaded cars out to Camp Gruber and bring back to Braggs empties; that at the time of the accident, they were pushing six cars of sand and gravel ahead of the engine, intestate riding on the fifth car ahead of the engine, sitting astride the right or south side of an ordinary coal car and on the forward end, which car was loaded with gravel, with one foot on the gravel and the other on a grab iron on the outside, and with a switch list in one hand and a lighted lantern in the other; that on the way down they had to pick up an empty car which necessitated the making of a coupling to the forward loaded car; and that in making the coupling intestate fell from the car on which he was riding, resulting in his injury and subsequent death on June 2, 1942. Each and every member of the train crew except Keeton, testified that the train was brought to a complete stop about 100 feet from the empty car and that thereafter the engine pushed the loaded cars up to the empty to make the coupling at a rate of one or two miles per hour at the signal of brakeman Vaughn and that the coupling was very light and easy, and not out of the ordinary in any way. The engineer and fireman

testified that it was so easy that they felt no jolt or jar in the cab. Witness Vaughn testified that he gave the signal to the engineer to proceed to the empty after walking to it and gave the easy signal when the front car was about fifty feet away and that by the easy signal the engineer knew you wanted him to slow down; that he gave the stop signal when the train was about three or four feet from the empty and the engineer stopped as soon as possible; and that he went about two feet after the coupling. He said this stop was a very ordinary one, with a slight jar. When asked on cross-examination if this coupling was about as hard as he ever saw the engineer make, he answered: "No, sir, it was a very ordinary one." A little later, in answer to a question whether that stop was the hardest he ever saw him make there, he answered: "Yes, sir."

Appellee testified, over appellant's objections and exceptions to a statement made to her by her husband, as a dying declaration. She said: "He realized that he was very sick and told me he wasn't going to get well. He told me how it happened; he said he was sitting on the corner and there was a sudden stop and he was jerked off. He was sitting on the corner of the car with a switch list in one hand and a light in the other; there was a sudden stop. After he was jerked off, he knew nothing more; just said there was a sudden hard stop and he was jerked off."

This is the substance of all of the testimony the jury had before it on which to make a finding of negligence, and we think it wholly insufficient to show any negligence whatever in making the coupling complained of. All the members of the crew testify that it was just the ordinary coupling and without any unusual jerk or jar— so slight as to be imperceptible to the engineer and fireman. Nor do we think the dying declaration sufficient to make out a case of negligence for the jury, conceding without so holding that it was competent and does not offend against the statute, § 5154 of Pope's Digest.

In *Krumm* v. *St. L., I. M. & S. Ry. Co.*, 71 Ark. 590, 76 S. W. 1075, it was said that it was "not practical to

operate freight trains without occasional jars and jerks calculated to throw down and injure careless and inexperienced persons standing in the car.'' This language was quoted in *Palsey* v. *St. L., I. M. & S. Ry. Co.*, 83 Ark. 22, 102 S. W. 387, 13 Ann. Cas. 121, where it was held that a railroad company ''cannot as a rule be said to be negligent because there are occasional jars and jerks in the operation of such trains (freight), though jars of great, unusual and unnecessary violence would. be evidence of negligence on the part of the employees operating the train.'' There is nothing in any of the evidence to show that the jar resulting from the coupling was out of the ordinary or that it was made with ''great, unusual and unnecessary, violence.'' The most that the intestate said in his dying declaration was that ''there was a sudden stop and he was jerked off—that there was a sudden stop and he was jerked off.'' That language alone was not sufficient to make a question of fact for the jury as to the negligence of engineer Brown in making the contact for the coupling, especially when intestate's precarious position on the car, with a switch list in one hand and a lantern in the other, is considered. Of course, his contributory negligence, if any, would not prevent a recovery, but the negligence of appellant must be established before there can be any recovery.

As said by the U. S. Supreme Court in *Atchison, Topeka & Santa Fe Ry. Co.* v. *Saxon*, 284 U. S. 458, 52 S. Ct. 229, 76 L. Ed. 397: ''As often pointed out, one who claims under the Federal Act must in some adequate way establish negligence and causal connection between this and the injury.'' After quoting that language this court, in *St. L.-S. F. Ry. Co.* v. *Childers*, 197 Ark. 527, 124 S. W. 2d 964, said: ''In other words, before there can be a recovery, to compensate injury to the employee, there must be negligence on the part of the employer with causal connection between that negligence and the employee's injury.''

In the recent case of *Mo. Pac. R. R.* v. *Guy*, 203 Ark. 166, 157 S. W. 2d 11, it was held that the necessary and ordinary matter of shifting gears on a weed burning ma-

chine would not of itself be negligence. It quoted from *Mo. Pac. R. R. Co.* v. *Baum,* 196 Ark. 237, 117 S. W. 2d 31, and *St. L.-S. F. Ry. Co.* v. *Porter,* 199 Ark. 133, 134 S. W. 2d 546, and we think the principles announced in those cases rule the instant case adversely to appellee. The Baum and Porter cases related to liability to them as passengers on passenger trains, involving a jerk or lurch of the trains. In the Porter case we quoted from *Harris* v. *Bush, Receiver,* 129 Ark. 369, 196 S. W. 471, the following: ''There is much evidence tending to show that there was no unusual jerking or lurching of the train either at Argenta or while slowing down to a stop at the Little Rock station. Unless it was a negligent jerking or lurching of the train, it is apparent that appellant had no cause of action against the appellee. In other words, if the injury was purely accidental and not the result of the negligent operation of the train, appellee would not be responsible.'' And in the Guy case, *supra,* we said: ''If the doctrine with reference to lurching and jerking of trains is applicable to a passenger, as announced by this court in the above decisions, it would certainly apply more forcibly to an employee, such as the appellee, whose duty it was to work upon and be familiar with the usual and necessary operations of the weed-burning machine.''

In the Baum case, *supra,* we said: ''In order to make a railroad company liable to a passenger injured by a jolt or jerk of the train, the rule, as stated in 10 C. J., § 1387, p. 973, is as follows: 'The jerk or jolt must be unnecessarily sudden or violent; such jerks and jars as are necessarily incident to the use of the conveyance, and are not the result of negligence, will not render the carrier liable for resulting injuries.' ''

There is no evidence in this record that the stop was unnecessarily sudden or violent, only that it was sudden and hard, but not unnecessarily so.

Appellee argues the use of the independent brake which affected only the engine, by the engineer, instead of the brake that worked on each car by application of the air, could or should be considered by the jury in determining the question of negligence, but no person

testified that the use of the independent brake was improper, or that the air brakes on all the cars should have been used.

Since, as we have shown, there was no substantial evidence of negligence of appellant, the judgment will be reversed and the cause dismissed.

ROBINS, J., dissents.

ROBINS, J. (dissenting). I think the rehearing should be granted. The testimony of appellee was to the effect that Keeton made to her a declaration (competent under § 5201 of Pope's Digest of the laws of Arkansas to establish cause of his death) that there was a "sudden, hard stop" and that he (Keeton) was "jerked off." It was the function of the jury to say whether this version of the occurrence was true, and, if true, whether it established negligence on the part of appellant's employee who was operating the locomotive at the time of Keeton's injury. *Tennant* v. *Peoria & P. U. Ry. Co.*, 321 U. S. 29, 64 S. Ct. 409.

We have frequently held that, in testing the sufficiency of the evidence to support a verdict, we must give the testimony in favor of the appellee the strongest probative force that it will reasonably bear. *D. F. Jones Construction Company, Inc.,* v. *Lewis,* 193 Ark. 130, 98 S. W. 2d 874; *Chicago, Rock Island & Pacific Railway Company* v. *Manus,* 193 Ark. 397, 100 S. W. 2d 258; *American Surety Company* v. *Kinnear Manufacturing Company,* 185 Ark. 953, 30 S. W. 2d 825. Considered in the light of this rule, the evidence in this case was sufficient, in my opinion, to authorize the jury to find that Keeton's death was caused by the negligence of appellant's servant.