## AYRES v. UNION PAC. R. CO.

No. 6977. Decided January 6, 1947. (176 P. 2d 161.)

See 39 C. J., Master and Servant, sec. 570; 35 Am. Jur. 667.

*Rawlings, Wallace & Black* and *Wayne L. Black,* all of Salt Lake City, for appellant.

*H. B. Thompson, Bryan P. Leverich, A. U. Miner* and *M. J. Bronson,* all of Salt Lake City, for respondent.

PRATT, Justice.

This is an appeal from a judgment upon a directed verdict of no cause of action in a case founded upon the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq.

The following facts are not in any material dispute: The accident happened about 3:20 a. m., 23 November 1945 in the Cheyenne railroad yards. The tracks at the scene of

the accident run in a general east and west direction. On the south of the group of tracks are two sets of tracks—Nos. 9 and 10. No. 9 runs almost east and west. No. 10 branches off from No. 9 slightly to the southwest. They are joined by a switch. So far as the scene of this accident is concerned they form a narrow "y" with the mouth of the "y" pointing generally west. Certain cabooses were on track 10 southwest of the switch. A train sat on track 9 west of the switch. Plaintiff was the fieldman of a switching crew which included the foreman, a pin-puller, a fireman and an engineer. The duty the group had to perform at the time was taking five cabooses from track 10 east through and clear of the switch then backing them up along track 9 for a coupling of the last caboose with the train.

This duty was undertaken with the following results: The cabooses were hauled east of the switch, the foreman threw the switch, signaled for the engineer to back along track 9 and directed plaintiff to board the rear caboose, the one that would have direct contact with the train when the coupling occurred. The cabooses were moved back along track 9 a little faster than a man could walk—about 4 to 5 miles per hour—and plaintiff undertook to carry out the foreman's direction by boarding the southwest corner step of the end caboose. He fell across the rails in the path of the moving caboose and his right hand was crushed by its wheels. The washout signal was given by the foreman when he say plaintiff fall and the cabooses were brought to a quick stop.

The controversy between the parties arises over what happened between the time plaintiff boarded or attempted to board the caboose and the time of the washout signal. Plaintiff describes it as follows:

"* * * There was a jerk a sudden stop or something and off I went * * *."

He claims to have been firmly established on the step at the time, grasping grab irons to hold himself on. The other crew members deny that there was such a jerk or a

stop, and the foreman who saw the accident said the fall happened in plaintiff's fumbling to get upon the step without raising his foot high enough and his losing a grip on the right-hand iron, thus throwing his body under the caboose in his unsuccessful attempt to hold with the left. Both sides maintain that there was no reason, so far as the movement toward coupling the cabooses to the train was concerned, to stop or jerk the train at that moment of time. They had not reached the point where the pin-puller would act to release the caboose.

Of course the question of whether or not there was such a jerk or stopping would be for the jury to determine if the case should be submitted to them. The lower court took the case away from the jury apparently upon the theory that plaintiff's evidence, even though assumed to be true, did not show negligence on the part of defendant. Counsel for defendant argues that it is not sufficient merely to show a jerk or sudden stop—that plaintiff must show the cause of that action and that such cause evidenced negligence upon defendant's part.

Thus we have, as the principal issue in this case, the question of whether or not such a sudden jerk or stop is proof of negligence on the part of defendant. The complaint alleges that negligence as follows:

"* * * defendant suddenly, unexpectedly and without warning reduced the speed of said cut [referring to the group of cabooses being moved by the engine] to such an extent and in such manner as to cause the rear of said cabooses to be jerked violently thereby causing plaintiff to be thrown and jerked from his position * * *."

There is no question but that plaintiff supported the facts of his allegation by his testimony. In order to determine whether or not those facts without a showing of what caused the jerk, show negligence, it is advisable to consider at least two of the other decisions cited upon the point.

In the case of *Ward* v. *Denver & R. G. W. R. Co.,* 96 Utah 564, 86 P. 2d 837, this Supreme Court upheld liability in a case similar to the present, there being this difference however: The foreman there forgot which cars were to be

cut and unexpectedly gave a slow signal so that he could ascertain where the cut was to be made. The cut was moving faster than in the present case, and such a slow signal would cause it to jerk sufficiently to dislodge plaintiff. Can it be said the fact that the jerk was traceable to the order of the foreman distinguishes that case from this to such an extent as to indicate the difference between a negligent jerk and a non-negligent jerk? We think not. The testimony in the present case is that jerks or sudden stops were within the control of the engineer—except of course those incident to the striking of objects on a track—and there is no contention here that the jerk or stop was incident to any such foreign object. If then there was such a jerk or stop which was the result of the handling of the engine by the engineer, what difference does it make whether or not the engineer acted upon his own initiative or at the direction of the foreman. The two acts bear to the plaintiffs respectively, the same relationship; if one is evidence of negligence, so is the other. The dangerous character of the act—the jerk or stop—lies in its unexpectedness, not in the words spoken, or the signals given, so that be the cause of its initiation on the shoulders of any employee of the railroad or upon several in succession, that dangerous character does not change. It may be that the engineer jerked the cabooses while intending to slow or stop or it may be that he jerked them unintentionally—it makes no difference—the jerk lies within the realm of the unexpected—the unanticipated. When we speak of unexpected or unanticipated we do not wish to imply that liability rests upon the question of whether or not a particular plaintiff expected or anticipated a jerk or stop. His mind might have been woolgathering, and he might have been dislodged by a jerk or stop incident to the normal performance of the duty of coupling the cabooses to the train in question.

No doubt that is why the court struck out the answer to the question of whether or not plaintiff expected the jerk. "Unexpected" or "unanticipated" is measured in the light of what was the normal performance of the duty in-

volved, and a jerk or stop is unexpected or unantici-pated when it was not reasonably to be expected as part of the normal performance of that duty. We do not adopt the suggestion that has been made, inferentially at least, that the mere happening of the jerk or stop is suf-ficient proof to submit to the jury, but when the jerk or stop is characterized by testimony taking it out of the normal incident to the performance of the duty involved, it be-comes an issue for the jury to determine. The Ward case, this case, and the Keeton case are examples of jerks and stops that vary from the normal.

The case of *Missouri Pac. R. Co.* v. *Keeton,* 207 Ark. 793, 183 S. W. 2d 505; *Keeton* v. *Thompson,* 326 U. S. 689, 66 S. Ct. 135, is one of the latest cases on the subject. In that case there was a conflict between the parties as to whether or not there was a sudden jerk at or about the time of the coupling. The testimony that there was, rested almost en-tirely upon statements of the deceased that there was a sudden hard stop and he was jerked off. The stop was characterized as one of the hardest the witness had seen. The Arkansas Supreme Court refused to submit the case to the jury. The Supreme Court of the United States, how-ever, held that there was sufficient to go to the jury. Com-paring that case with the present it is probably fair to say that a sudden stop or jerk at a time when smooth motion is to be anticipated—as in the present case—is even worse than a hard stop at or near the time a stop of some kind is to be anticipated.

We are of the opinion that the lower court committed error in directing a verdict of no cause of action.

Appellant objects to the lower court's refusal to permit an answer to the following question:

"At the time that you were hurt, you may state whether or not you were expecting any stopping of the caboose?"

As indicated in our discussion above the liability of the defendant is not measured by the individual expectations of the plaintiff. The liability is measured by what may be

reasonably expected in the normal course of the performance of the duty involved. Under the circumstances we see no error in the lower court's ruling.

Objection was sustained to the following question on behalf of appellant: ■

"Now from your knowledge of the work of a switchman, and your knowledge of the condition your hand is in at this time, you may state whether or not it would be possible for you to perform the duties of a switchman with safety with the way the hand is now?"

Prior to this question appellant had given in detail the condition of his hand and also the requirements for switching. This question called merely for a conclusion founded upon all those details—a conclusion that the jury was capable of making upon the testimony as it then stood. We see no error in the lower court excluding such a summation.

Defendant's foreman was permitted to explain why he didn't give a stop signal when he saw plaintiff fumbling for the caboose step. Although it was not strictly within the issues, we see no prejudicial error in its submission. Defendant correctly anticipated that plaintiff would seek to emphasize that alleged failure upon cross-examination. However, the question plaintiff asked upon cross-examination was argumentative and was properly ruled out. [see appellant's assignment of error #8]

The foreman was also permitted on direct examination to testify how he would have attempted to board the caboose by stating whether or not he would have done as plaintiff did. As the foreman's method of board- ■ ing the caboose is not the formula for determining the correct way of accomplishing that feat, that testimony was improperly admitted.

There are in the record a series of questions submitted as expert testimony, and calling for the opinion of witnesses as to the effect of a sudden stop upon a switchman in the position of plaintiff at the time of the accident. The answers were ruled out upon objection of de- ■ fendant. All plaintiff sought to prove was that such a sudden stop would throw the switchman in the direction

the caboose was moving at the time of the stop. We see no prejudice in excluding these answers, as the jury probably knew as much about that as did the witnesses. Nevertheless, it would not have been error to have permitted the witnesses to answer. The answer may have assisted the jury to visualize the situation though it probably could be as well done in counsel's argument. The caboose being stopped, and the switchman's body not, naturally the latter would have a tendancy to continue in motion in the direction being traveled. If the switchman's grip was unable to hold that forward momentum then of course his body would leave the caboose in that direction.

The judgment and verdict of the lower court are vacated and set aside and the case is remanded for a new trial. Costs to appellant.

McDONOUGH, and WADE, JJ., concur.

LARSON, Chief Justice.

I concur. The rule in this jurisdiction, and which the writer does not approve, seems to be well settled that in many cases the court must submit a case to the jury even though if the verdict be against defendant, the court upon motion might, and would be upheld if it did, grant a new trial on the ground that the evidence was insufficient.

In the instant case, I think there was evidence enough to take the case to the jury.

WOLFE, Justice.

I concur. However, I have some doubt as to whether the question reading

"At the time you were hurt, you may state whether or not you were expecting any stopping of the caboose"

was improper. I concede that it is not the state of mind of the individual employee as to expectation of a happening in the operations which is ordinarily material. The plaintiff is only required to anticipate the normal or usual happen-

ings in railroad operation and his duty is to exercise reasonable care to guard against the hazards inherent in such happenings. The usual and best way to prove whether a happening such as a sudden stop was normal to the type of railroad operation then under way, would be to introduce the evidence of what was or was not careful operation by men experienced in such operation under the circumstances attending it. Furthermore, the question did not call for anything probative of the plaintiff's case if it was meant to anticipate a defense that the plaintiff had opportunity to know that a sudden stop was coming and that he did know of it and in view of such knowledge did not exercise the care which such knowledge imposed upon him. Such defense was evidently not within the pleadings because the defendant denied there was a sudden stop and claimed that the fall was due to plaintiff's failure to properly grasp the hand rail. Even though defendant had defended in mitigation of damages on the carelessness of a forewarned plaintiff in not using care to protect himself when he had ample opportunity to do so, the plaintiff had no obligation to anticipate such evidence as part of his case. But I am not sure that it did not have some probative value in showing that if such happening was unexpected to the plaintiff, an employee engaged in operating the train, it was a happening not to be expected in the normal operation of the train. But since such manner of proving a railroad event was unusual or not to be expected in the normal course of operations is somewhat tenuous and since the case must, independently of the ruling on this question, be reversed and a new trial granted, at which time the plaintiff may conduct his case as to avoid any doubt as to the propriety of the question, I am giving my full concurrence.

I think it would not be error to permit one engaged in a certain vocation to testify as to the conclusion that he was unable to perform that vocation in whole or in part after he had given testimony of the physical results of his injury and the requirements of the job, giving the reasons why he could not do so. At least it could hardly be deemed preju-

dicial. But where the jury can draw its own conclusions from his evidence neither is it error to reject such conclusion of the witness.