352 P.2d 222

Parley D. BILLS, Plaintiff and Appellant,

v.

DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, Defendant and Respondent.

No. 9028.

Supreme Court of Utah.

May 25, 1960.

see also Barker v. Dunham, 9 Utah 2d 244, 342 P.2d 867.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for appellant.

VanCott, Bagley, Cornwall & McCarthy, Clifford L. Ashton, Grant Macfarlane, Jr., Salt Lake City, for respondent.

WADE, Justice.

This is an appeal by Parley D. Bills from a jury verdict and judgment thereon of no cause of action. Appellant commenced this action for injuries sustained in a fall caused by the severe jerking of the caboose during the course of his employment by The Denver and Rio Grande Western Railroad Company, respondent herein. The action is governed by the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., which establishes liability if the injury to the employee is caused in whole or in part by the negligence of the employer and provides that the defense of contributory negligence shall not bar recovery but shall only diminish the damages.

The record discloses that on April 20, 1955, the day of the accident, appellant had been assigned as conductor in charge of a freight train which left Salt Lake City with its ultimate destination Helper, Utah. The train was about one mile long. It arrived in Provo about 7:00 p. m.; where the train stopped on respondent's east track where appellant, who had been riding in the caboose, went to the yard office and then advised his head and rear brakemen of the switching to be done and returned to the caboose to "write up" his train. While appellant was so engaged the switching operations were performed under the directions of the brakemen. The switching could have been done by leaving the rear of the train and the caboose on the track where the original stop had been made. Then the engine and the head end of the train could have been moved the necessary distance and backed across respondent's lead or crossover track. When this switching had been accomplished, the engine could have been moved forward across the crossover track and backed to a coupling with the rest of the train. Had this method been used there would have been no necessity of making another stop of the entire train. The brakemen, with whom appellant had left the decision, used a method which the record showed was considered equally proper and usual by appellant and had been used by appellant himself hundreds of times in Provo. This method entailed the pulling of the entire train by the engine across the crossing until the cars which were to be cut out reached the desired point where the train was stopped and then the necessary cutting and switching done.

It was this second stop which caused appellant's accident. Appellant had just finished writing up his report and, assum-

ing that the switching had been done, he got up and started to cross the caboose after the trains had moved a short distance, when the train stopped with a violent jerk causing him to fall. There was evidence that whenever a short, slow move is made on level ground there will be a jerking. This is so because the couplings of freight trains are loosely connected, there being about six inches of play or free action in each coupling. When a stop of a mile-long train, which has been moving about five miles an hour, is made in a short move on level ground the slack in the couplings will tend to bunch the cars at the head of the train first, and these cars will be stopped before the slack action is taken up in the rear cars. The result is that the rear cars run into the stopped front cars. The longer the train is, the more violent is the slack action in the rear cars.

At the trial appellant claimed that respondent was negligent because the engineer stopped the train in a manner which subjected the caboose to an unusually violent jerk, which could have been avoided had a proper stop been made, and that it was also negligent in not using the method of switching which would have avoided the second stop altogether.

In its Instruction No. 12 the court told the jury:

"If you find from a preponderance of the evidence that the defendant, in operating its train, caused the same to stop either unexpectedly or more violently than was ordinary or customary and if you find that defendant failed to exercise ordinary reasonable care in so stopping that train, then you are instructed that the defendant was negligent and if you further find from a preponderance of the evidence that such negligence proximately caused, in whole or in part, injuries to plaintiff then you should return a verdict in favor of the plaintiff and against the defendant and award to plaintiff damages as in these instructions set forth."

That instruction clearly told the jury that if it found the facts to be that under the circumstances disclosed by the evidence the exercise of ordinary, reasonable care would have avoided the stop, the respondent was negligent in making such stop, or if it were not negligent in making the stop, nevertheless, if the stop as made was more violent than was ordinary or customary, it could find that the defendant was negligent in the manner in which the stop had been made. This instruction covered appellant's theories of what respondent's negligence consisted. Since the jury brought in a verdict of "no cause of action" it must have found that respondent had not acted negligently in either of these particulars, and that in the stopping and manner of stopping, ordinary, reasonable

care had been exercised. This is so because this action was brought under the provisions of the Federal Employers' Liability Act, and the jury was told that the defense of contributory negligence would not bar recovery, but only diminish the damages which it could award should it find respondent negligent in the manner claimed by appellant to be the proximate causes of his injuries.

Appellant contends that the court committed prejudicial error by giving an instruction such as the requirement of a safety rule of respondent that employees should exercise reasonable care against injury from jerks or slack action or any other unexpected motion by keeping a secure grip and foothold when riding on moving equipment, and in instructing the jury that because there is of necessity some free play between couplers on trains which results in jerking or jarring, the burden was upon appellant to prove by a preponderance of the evidence that his fall was caused by the train being operated "in such a manner as to cause an unexpected jarring or jerking of unusual or unnecessary severity."

Appellant argues that the giving of the instruction about the requirement of respondent's safety rule revived the doctrines of contributory negligence and assumption of risk in determining whether respondent was liable. He further argues that the giving of the instruction about the necessity of the jarring or jerking, being both unexpected and of unusual or unnecessary severity, took away from the jury the question of whether respondent was negligent either because the stop was not reasonably to be expected under all the circumstances or to find it negligent because the stop, even though expected, was unusually violent.[1]

These arguments might have had some validity had not the court instructed the jury that under the provisions of F.E.L.A., neither contributory negligence nor assumption of risk barred recovery, and then, as we have shown above, instructed it that it could find the respondent negligent if it had failed to exercise ordinary, reasonable care in making the stop or in making the stop in such a manner as to cause an unusual jarring or jerking. In view of that instruction, the jury could not have been misled into thinking that either the defenses of contributory negligence or assumption of risk would bar appellant's right to recovery if the railroad were negligent in any manner, nor did the instruction that it could only find respondent negligent if there were both an unexpected stop and an unusual jarring or jerking have misled the jury. Rather, that instruction told them that the jarring must have been unexpectedly or unnecessarily severe. Had

1. Ayres v. Union Pacific R. Co., 111 Utah 104, 176 P.2d 161.

the jarring been of the type or severity usually expected in a stop, and if such stop was not unexpected, then, of course, under the circumstances of this case, respondent could not have been negligent in any particular.

We have also carefully considered appellant's contentions as to the prejudicial effect of instructions relating to the engineer and the stop, and manner in which the stop was made, and in view of the circumstances shown by the evidence and all the instructions taken as a whole, we find no merit to these contentions nor to the contention that the court took away from the jury the question of res ipsa loquitur even though it did give an instruction on that point.

We also conclude that there was no prejudicial effect in the striking of the testimony of a witness who had not seen the movement of the train, but had testified he heard a violent run-in in view of the fact that the jury had evidence before it from which it could have found that there was such a violent run-in, but nevertheless did not find respondent negligent.

Affirmed. Costs to respondent.

CROCKETT, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.